**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 22-cr-185 (JDB)** |
| **v.** | : | |
| | : | |
| **YVONNE ST CYR,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS COUNTS ONE, TWO, THREE, FOUR, AND SIX**

Defendant Yvonne St Cyr, who is charged in connection with events at the U.S. Capitol on January 6, 2021, has moved to dismiss Counts One (18 U.S.C. § 231), Two (18 U.S.C. § 231), Three (18 U.S.C. § 1752(a)(1)), Four (18 U.S.C. § 1752(a)(2), and Six of the Indictment (40 U.S.C. § 5104(e)(2)(G)).  (ECF No. 49.)

In her motion, Defendant St Cyr asserts that the conduct alleged in Counts One and Two – i.e., her impeding and interfering with law enforcement during a civil disorder – does not violate Section 231(a)(3) because the statute is vague, arbitrary, lacks scienter, and criminalizes First Amendment speech.  St Cyr asserts Counts Three and Four do not concern conduct related to a "restricted building or grounds," the vice president cannot "temporarily visit" the Capitol, and the Secret Service did not restrict the Capitol building or grounds on January 6, 2021.  Finally, Defendant St Cyr asserts Count Six is unconstitutionally vague and overbroad.

Defendant St Cyr's contentions lack merit and should be rejected, just as all other judges in this District have rejected the challenges that St Cyr raises in her motion.  *See, e.g.*, *United States*

*v. Gillespie*, No. 22-cr-60 (D.D.C. Nov. 29, 2022) (Howell C.J.);[1] *United States v. Jensen*, 21-cr-6 (D.D.C. August 26, 2022) (Kelly, J.);[2] *United States v. Strand*, 21-cr-85 (D.D.C. August 17, 2022) (Cooper, J.);[3] *United States v. Bingert*, 21-cr-91, 2022 WL 1659163, at *7-*11 (D.D.C. May 25, 2022) (Lamberth, J.);[4] *United States v. Puma*, 21-cr-454, 2022 WL 823079, at *12 n.4 (D.D.C. Mar. 19, 2022) (Friedman, J.);[5] *United States v. Bozell*, 21-cr-216, 2022 WL 474144, at *5 (D.D.C. Feb. 16, 2022) (Bates, J.);[6] *United States v. Nordean*, 21-cr-175, 2021 WL 6134595, at *6-*8 (D.D.C. Dec. 28, 2021) (Kelly, J.);[7] *United States v. Mostofsky*, No. 21-cr-138, 2021 WL 6049891, at *11 (Dec. 21, 2021) (Boasberg, J.);[8] *United States v. Nassif*, No. 21-cr-421 (JDB), 2022 WL

---

[1] Defendant Gillespie challenged the charge of violating 18 U.S.C. § 231, as well as other charges Defendant St Cyr is not charged with violating.

[2] Defendant Jensen challenged the charge of violating 18 U.S.C. § 231.

[3] Defendant Strand challenged the charges of violating 18 U.S.C. §§ 1752 (a)(1) and (2), as well as other charges Defendant St Cyr is not charged with violating.

[4] Defendant Bingert challenged the charges of violating 18 U.S.C. §§ 231, 1752 (a)(1), and (2), as well as other charges Defendant St Cyr is not charged with violating.

[5] Defendant Puma challenged the charges of violating 18 U.S.C. §§ 1752 (a)(1) and (2), as well as other charges Defendant St Cyr is not charged with violating.

[6] Defendant Bozell challenged the charges of violating 18 U.S.C. §§ 1752 (a)(1) and (2), as well as other charges Defendant St Cyr is not charged with violating.

[7] Defendants Nordean, et al challenged the charges of violating 18 U.S.C. §§ 231, 1752 (a)(1) and (2), as well as other charges Defendant St Cyr is not charged with violating.

[8] Defendant Mostofsky challenged the charges of violating 18 U.S.C. §§ 231, 1752 (a)(1), and (2), as well as other charges Defendant St Cyr is not charged with violating.

4130841, at \*2–\*8 (D.D.C. Sept. 12, 2022);[9] *United States v. Seitz*, 21-cr-279 (DLF), Dkt. No. 51 at 11-19 (D.D.C. Aug. 18, 2022).[10]

## **FACTUAL BACKGROUND**

### *General Facts*

At 1:00 p.m., on January 6, 2021, a Joint Session of the United States Congress convened in the United States Capitol building. The Joint Session assembled to debate and certify the vote of the Electoral College of the 2020 Presidential Election. With the Joint Session underway and with Vice President Mike Pence presiding, a large crowd gathered outside the U.S. Capitol. As early as 12:50 p.m., certain individuals in the crowd forced their way through, up, and over erected barricades. The crowd, having breached police officer lines, advanced to the exterior façade of the building. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol. At approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to – and did – evacuate the chambers.

### *Facts Specific to Defendant St Cyr*

In early January 2021, Defendant St Cyr traveled by vehicle from Idaho to Washington, D.C.  On January 6, 2021, Defendant St Cyr attended the "Stop the Steal" rally south of the White House; thereafter, she went to the U. S. Capitol, where she remained on restricted grounds between approximately 2:00 p.m. and 4:00 p.m.

---

[9] Defendant Nassif challenged the charge of violating 40 U.S.C. § 5104(e)(2)(G).
[10] Defendant Seitz challenged the charges of violating 18 U.S.C. §§ 1752 (a)(1) and (2), 40 U.S.C. § 5104(e)(2)(G), as well as other charges Defendant St Cyr is not charged with violating.

Between approximately 2:15 and 2:30 p.m., Defendant St Cyr was on the West Plaza of the Capitol at the front of the group of people up against the "bike rack" style barricades, face-to-face with police officers.  From the barricades and commands given by police, it was clear that people were not allowed on the Capitol grounds.  After confronting police and using her back to push against the bike racks, Defendant St Cyr pushed the barricades open, making her among the first rioters to breach the barricades on the West Plaza of the Capitol.



After Defendant St Cyr breached the barricades, she proceeded across the West Plaza of the Capitol, making her way to the Lower West Terrace and ultimately into the Lower West Terrace tunnel.

Between approximately 2:56 and 3:19 p.m., Defendant St Cyr remained in the Lower West Terrace tunnel as other rioters assaulted police officers.  While rioters were pushing against police officers guarding the doors into the Capitol, and in response to another rioter needing a break from yelling for "fresh patriots," St Cry said to another rioter, "I got a loud voice." St Cyr then turned to the mob and shouted, "We need fresh people; we need fresh people!"



A few minutes later, Defendant St Cyr encouraged rioters fighting with the law enforcement officers protecting the Capitol by yelling over and over, "push, push, push, push, push, push."

Later in the afternoon, Defendant St Cyr entered the U.S. Capitol, Senate Room ST-2M through a broken window.  While in that room, St Cyr video recorded others who broke a window and called to the crowd outside to provide gas masks. Then, while still in the room, Defendant St Cyr turned the camera toward herself and filmed herself saying, "Super sad that this is America, and Americans are being beaten for wanting to save their country.  Welcome to communist America.  Aren't you so fucking proud?"  Defendant St Cyr posted a live video to Facebook while inside the Capitol; she also filmed the mob on the west front of the grounds  from her vantage point inside the Capitol.



## PROCEDURAL HISTORY

Based on her actions on January 6, 2021, Defendant St Cyr was charged by the grand jury on May 25, 2022, with two counts of Civil Disorder, in violation of 18 U.S.C. §§ 231(a)(3) and 2; Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).  (ECF No. 37.)

On June 16, 2022, Defendant St Cyr was arraigned.  She now moves to dismiss five out of the six counts in the Indictment.  (ECF No. 49.)  A trial is scheduled to commence on March 6, 2023.

## LEGAL STANDARD

An indictment is sufficient under the Constitution and Rule 7 of the Federal Rules of Criminal Procedure if it "contains the elements of the offense charged and fairly informs a

defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), which may be accomplished, as it is here, by "echo[ing] the operative statutory text while also specifying the time and place of the offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). "[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)). An indictment need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*." Fed. R. Crim. P. 12(b)(1) (emphasis added). It follows that Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the Government "has made a *full* proffer of evidence" or the parties have agreed to a "stipulated record," *United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005) (emphasis added)—neither of which has occurred here.

Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.). Criminal cases have no mechanism equivalent to the civil rule for summary judgment. *United States v. Bailey*, 444 U.S. 394, 413, n.9 (1980) (motions for summary judgment are creatures of civil, not criminal trials); *Yakou*, 428 F.2d at 246-47 ("There is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context"); *United States v. Oseguera Gonzalez*, No. 20-cr-40-BAH at *5, 2020 WL 6342940 (D.D.C. Oct. 29, 2020) (collecting cases explaining that there is no summary judgment procedure in criminal cases or one that permits

pretrial determination of the sufficiency of the evidence).  Accordingly, dismissal of a charge does not depend on forecasts of what the Government can prove. Instead, a criminal defendant may move for dismissal based on a defect in the indictment, such as a failure to state an offense. *United States v. Knowles*, 197 F. Supp. 3d 143, 148 (D.D.C. 2016). Whether an indictment fails to state an offense because an essential element is absent calls for a legal determination.

Thus, when ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and more specifically, the language used to charge the crimes. *Bingert*, 21-cr-93 (RCL) (ECF 67:5) (a motion to dismiss challenges the adequacy of an indictment on its face and the relevant inquiry is whether its allegations permit a jury to find that the crimes charged were committed); *McHugh*, 2022 WL 1302880 at *2 (a motion to dismiss involves the Court's determination of the legal sufficiency of the indictment, not the sufficiency of the evidence); *United States v. Puma*, No. 21-cr-454 (PLF), 2020 WL 823079 at *4 (D.D.C. Mar. 19, 2022) (quoting *United States v. Sunia*, 643 F.Supp.2d 51, 60 (D.D.C. 2009)).

## ARGUMENT

As an initial matter, Defendant erroneously asserts that the government has alleged she went inside the Capitol for the purpose of obstructing the certification of "the vote" (presumably she means the counting of the electoral college votes).   While Defendant St Cyr may have very well engaged in such conduct, she has not been  charged with a violation of 18 U.S.C. § 1512, Obstruction of an Official Proceeding.

### I.      Counts One and Two

Counts One and Two of the Superseding Indictment charge Defendant St Cyr with impeding and interfering with law enforcement during a civil disorder, in violation of 18 U.S.C. § 231(a)(3).   Defendant St Cyr argues that Section 231(a)(3), the civil disorder statute, is

unconstitutionally vague and overbroad, lacks scienter, violates the First Amendment.  Judges in this district have rejected similar challenges to Section 231. *See Mostofsky*, 2021 WL 6049891, at *8–*9 (rejecting overbreadth challenges); *Nordean,* 2021 WL 6134595, at *16–*17 (rejecting vagueness and overbreadth challenges); *McHugh,* 21-cr-453 (JDB), ECF No. 51, at 28–37.[11]  This Court should too.

### A.  Vagueness Doctrine

An outgrowth of the Due Process Clause of the Fifth and Fourteenth Amendments, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement."  *Johnson v. United States*, 576 U.S. 591, 595 (2015).  To ensure fair notice, "generally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (citation omitted).

A statute is not unconstitutionally vague simply because its applicability is unclear at the margins, *United States v. Williams*, 553 U.S. 285, 306 (2008), or because reasonable jurists might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010).  A provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application. *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415

---

[11] A number of courts outside this circuit have also recently rejected similar challenges to Section 231. *See United States v. Phomma*, No. 20-465, 2021 WL 4199961, at *5 (D. Or. Sept. 15, 2021); *United States v. Rupert*, No. 20-cr-104 (NEB/TNL), 2021 WL 1341632, at *16–*20 (D. Minn. Jan. 6, 2021) (Report & Recommendation), *adopted*, 2021 WL 942101 (D. Minn. Mar. 12, 2021); *United States v. Pugh*, No. 1:20-cr-73-TFM, slip op. (S.D. Ala. May 13, 2021); *United States v. Wood*, No. 20-cr-56 MN, 2021 WL 3048448 (D. Del. July 20, 2021); and *United States v. Howard*, No. 21-cr-28-pp, 2021 WL 3856290 (E.D. Wis. Aug. 30, 2021).

U.S. 566, 578 (1974). A statutory provision is "not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'" *Bronstein*, 849 F.3d at 1107 (quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)). A statute is instead vague where it fails to specify any "standard of conduct . . . at all." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). A law is not vague because it "call[s] for the application of a qualitative standard . . . to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'" *Johnson*, 576 U.S. at 603–04 (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)).

There is a strong presumption that a statute is not vague. *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963). Other courts in this district have recognized that high bar. See *United States v. Gonzalez*, No. 20-cr-40 (BAH), 2020 WL 6342948, at *7 (D.D.C. Oct. 29, 2020); *see also United States v. Harmon*, No. 19-cr-395 (BAH), 2021 WL 1518344, at *4 (D.D.C. Apr. 16, 2021) (finding that the defendant did not meet the "stringent standard" to prevail on a Rule 12 vagueness motion).

### i.   Section 231 is Not Void for Vagueness

Federal legislation enjoys a presumption of constitutionality that may only be overturned "upon a plain showing that Congress has exceeded its constitutional bounds." *United States v. Morrison,* 529 U.S. 598, 607 (2000). Defendant St Cyr cannot overcome this presumption.

Section 231(a)(3) is not constitutionally vague. *See McHugh,* 21-cr-453, ECF No. 51, at 23*; Nordean,* 2021 WL 6134595, at *17. It provides sufficient notice of the conduct it prohibits. The terms Defendant St Cyr attacks, such as "any act to obstruct, impede, or interfere" (ECF No. 49 at 7), do not carry the potential for misunderstanding or make the statute "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015); *see also*

*Nordean*, 2021 WL 6134596, at *16 (observing that "there are specific fact-based ways to determine whether a 'defendant's conduct interferes with or impedes others,' or if a law enforcement officer is performing his official duties 'incident to and during' a civil disorder."). Like the challenge denied by this Court, Defendant St Cyr's motion "misunderstand[s]" vagueness: "There is a crucial difference between reasonable people differing over the meaning of a word and reasonable people differing over its application to a given situation—the latter is perfectly normal, while the former is indicative of constitutional difficulty." *McHugh,* 21-cr-453, ECF No. 51 at 23.

Contrary to Defendant St Cyr's arguments, the statute's terms are thus quite different from statutory terms that courts have found to be vague, such as statutes that turn on subjective judgments of whether a defendant's conduct was "annoying" or "indecent," or those that depend on the victim's state of mind, as in the cases defendant cites.  *See Nordean,* 2021 WL 6134595, at *16*; see also Williams*, 553 U.S. at 306; (citing *Coates*, 402 U.S. at 614, *United States v. Kozminski,* 487 U.S. 931, 949–50 (1988)).[12] "An ordinary person would have an intuitive understanding of what is proscribed by a ban on obstructing, impeding, or interfering with law enforcement." *McHugh,* 21-cr-453, ECF No. 51, at 33. In addition, Section 231(a)(3) is not unique; many state and federal statutes likewise criminalize "obstructing" the government's efforts to enforce the law and maintain public order, and they have been upheld. *See, e.g.,* 26 U.S.C.

---

[12] Defendant St Cyr also cites *McCoy v. City of Columbia*, 929 F. Supp. 2d 541 (D.S.C. 2013) (ECF No. 49 at 11); she states that *McCoy* invalidated the law at issue as overbroad, but *McCoy* in fact found it unconstitutionally vague. *Id.* at 554. In any event, *McCoy* is distinguishable. *See McHugh,* 21-cr-453, ECF No. 51, at 33. *McCoy* invalidated an ordinance making it unlawful "for any person to interfere with or molest a police officer in the lawful discharge of his duties." *Id.* at 546. As Judge Bates observed, unlike Section 231(a)(3), "the ordinance at issue in *McCoy* did not include a scienter requirement, and its use of only two operative verbs ('interfere and molest') prevented interpreters from . . . giving those words 'more precise content by the neighboring words with which it is associated." *McHugh*, at 33 n.24 (citing *McCoy*, 929 F. Supp. 2d at 553) ((quoting *United States v. Stevens*, 559 U.S. 460, 474 (2010)).

§ 7212(a) (prohibiting obstructing or impeding the administration of the tax laws); 18 U.S.C. § 2237 (making it unlawful to "oppose, prevent, impede, intimidate or interfere with" a maritime investigation); *United States v. Brice,* 926 F.2d 925, 930–31 (9th Cir. 1991) (rejecting overbreadth and vagueness challenges to 41 C.F.R. § 101-20.305, regulation prohibiting impeding or disrupting government duties).

Defendant St Cyr also claims that the phrase "incident to and during the commission of a civil disorder" is vague because she cannot tell whether the statute requires an individual to have participated in the civil disorder or if it is sufficient that he be in the general vicinity of the event. (ECF No. 49 at 7-8.)  This argument, too, is meritless.  "The crime set forth by the statute is not mere presence at a civil disorder . . . but an act committed during the course of such a disorder, so 'civil disorder' simply describes the environment in which the act must be committed in order to be subject to prosecution under § 231(a) (3)."  *Mechanic*, 454 F.2d at 852; *see also Howard*, 2021 WL 3856290, at *14 ("[T]he statute does not require the government to prove that the defendant created the civil disorder, or that he was participating in the civil disorder."). Contrary to Defendant St Cyr's argument that any "tumultuous public gathering" could qualify (ECF No. 49 at 7), "it is not just any public disturbance which is the subject of the section, but only public disturbances which (1) involve acts of violence (2) by assemblages of three or more persons, and which (3) cause immediate danger of or result in injury to (4) the property or person of any other individual." *Mechanic*, 454 F.2d at 853; *see* 18 U.S.C. § 232(1); *cf. United States v. Huff*, 630 F. App'x 471, 489 (6th Cir. 2015) (unpublished) (rejecting vagueness challenge to "civil disorder" term in 18 U.S.C. § 231(a)(2) and citing definition in 18 U.S.C. § 231(1)). *See McHugh*, 21-cr-453, ECF No. 51, at 32 n.22.

And even if a broad range of public gatherings could be deemed "civil disorders," Section 231(a)(3) criminalizes only particular conduct, not mere participation in such a disorder. The "civil disorder" language operates to <u>narrow</u> the situation where the statute may apply—unlike other statutes, which criminalize acts of obstruction, wherever they may take place. *See* 26 U.S.C. § 7212(a) (criminalizing obstruction of tax laws). The requirement that the *actus reus* take place in the context of a civil disorder does not make Section 231 vague; to the contrary, it limits its application.

Defendant St Cyr's vagueness claim also fails because her conduct clearly falls within the ambit of Section 231. The Court must consider vagueness "as applied to the particular facts at issue, for a [defendant] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applies to the conduct of others." *Nordean,* 2021 WL6134595, at *17 (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010) (cleaned up)); *see generally Wood*, 2021 WL 3048448, at *9 ("Defendant does not have standing to bring a facial vagueness challenge" to § 231(a)(3) because he failed to "demonstrate that [the statute] is vague as applied to his conduct"). The January 6, 2021, attack on the United States Capitol was clearly a "civil disorder," not just some "tumultuous public gathering" to which the police were called. And there is no question that Defendant St Cyr participated in the disorder. Tracking the statutory language, the indictment alleges that he "commit[ted] an act to obstruct, impede, and interfere with a law enforcement officer." (ECF No. 37.) Defendant St Cyr crossed into the restricted grounds of the Capitol; was one of the first to break through police barricades on the West Plaza; surged closer to the Capitol building and up into the Lower West Terrace tunnel, where she called for "fresh people" in the ongoing fight against the police; urged rioters to "push, push, push" against police in the tunnel; and entered the building through a broken window. She was not a bystander.

The statute is "sufficiently clear that a normally intelligent person could ascertain its meaning and would be given fair notice of whether or not his conduct is forbidden." *Mechanic*, 454 F.2d at 854.

### ii.  Section 231 Does Not Lack Scienter

Defendant St Cyr's argument that the statute is vague because it lacks an express scienter requirement or *mens rea* (ECF No. 49 at 8) is also incorrect.  Defendant St Cyr ignores the fact that Section 231(a)(3) requires *intent*, which narrows its scope.  *See Williams*, 553 U.S. at 294 (focusing on scienter requirement in finding that a statute was not overbroad); *McHugh*, 21-cr-453, ECF No. 51, at 29–31 (finding that Section 231(a)(3) includes an intent requirement).  The requirement that a defendant who violates Section 231(a)(3) act with the intent to obstruct, interfere or impede is critical to the First Amendment analysis.  *See United States v. Gilbert*, 813 F.2d 1523, 1529 (9th Cir. 1987) (intent requirement prevents application of statute to protected speech).  The statute requires proof that the "act" was done "to obstruct, impede, or interfere" with a firefighter or police officer, *i.e.,* the defendant's purpose or intent in performing the "act" must be to obstruct, impede, or interfere. *See Mechanic*, 854 F.2d at 854 (construing Section 231(a)(3) to include an intent requirement).  And even if the statute lacked an express scienter requirement, courts "generally interpret [] criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them."  *Elonis v. United States*, 135 S. Ct. 2001, 2009 (2015) (citation omitted); *see also United States v. Cassel*, 408 F.3d 622, 634 (9th Cir. 2005) ("[E]xcept in unusual circumstances, we construe a criminal statute to include a *mens rea* element even when none appears on the face of the statute.").

### B.  Section 231 does not violate the First Amendment

Defendant St Cyr contends that § 231(a)(3) is unconstitutionally overbroad under the First Amendment.  (ECF No. 49 at 10.)  St Cyr makes no mention of her own conduct on January 6, much less explain how charging her with a violation of 231(a)(3) undermined her own First

Amendment rights that she intended to exercise that day.  Rather, her argument presents only facial challenges to the statute that do not depend in any way on their application to this case.  Indeed, she does not even address the differences between "as applied" and facial First Amendment challenges.[13]

As every other judge in this district who has addressed this claim has held, this claim fails. A criminal law is facially overbroad only if "'a substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep.'"  *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008) (quoting *New York v. Ferber*, 458 U.S. 747, 769-71 (1982)); *see also United States v. Williams*, 553 U.S. 285, 293 (2008); *Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972).  A facial overbreadth challenge faces a steep climb when the statute focuses mainly on conduct, as § 231(a)(3) assuredly does.  *See Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (noting the "substantial social costs created by the overbreadth doctrine when it blocks application of a law to ... constitutionally unprotected conduct").

Judge Berman Jackson recently rejected an overbreadth challenge to § 231(a)(3).  *See United States v. Riley Williams*, 21-cr-0618, 2022 WL 2237301, at *6-7 (D.D.C. June 22, 2022). Judge Berman Jackson noted that "[i]n the past year, at least four other courts in this district have considered whether section 231(a)(3) is overbroad on its face, and all have concluded it is not." *Id.*

---

[13] One raising a facial challenge must establish "that no set of circumstances exists under which [the challenged statute] would be valid or that the statute lacks any plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 472 (2010). The person challenging the statute need not show injury to himself. *See Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 958 (1984). On the other hand, to prevail on an as-applied First Amendment challenge, the person challenging the statute must show that the regulations are unconstitutional as applied to their particular speech activity. *See Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 802-03 (1984); *accord, Edwards v. D.C.*, 755 F.3d 996, 1001 (D.C. Cir. 2014).

at *6.[14] Judge Berman Jackson "agree[d] with the reasoning in those decisions." *Id*. "First, the statute plainly covers conduct, not speech, as it criminalizes 'any *act* to obstruct, impede, or interfere with' a law enforcement officer engaged in the performance of official duties, and the terms 'obstruct, impede, or interfere with' are all plainly understood and must be supported by the facts in any particular case." *Id*. (emphasis added). "Although some 'acts' could also serve an expressive function, and one could come up with a hypothetical scenario in which the alleged interference involved particularly obstreperous speech, the law does not require dismissing a charge merely because there is a possibility that the provision could reach some constitutionally protected activity." *Id*. "Since section 231(a)(3) does not 'make unlawful a substantial amount of constitutionally protected conduct,' it is not overbroad on its face." *Id*. (citing *City of Houston v. Hill*, 482 U.S. 451, 459 (1987)).

Judge Berman Jackson also noted that "a *scienter* requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Id*. at *7 (quoting *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982)). She concluded that § 231(a)(3) "only criminalizes acts performed 'to obstruct, impede, or interfere with' a law enforcement officer," "in other words, the statute requires obstructive intent." *Id. See also Nat'l Mobilization Comm. to End War in Viet Nam v. Foran*, 411 F.2d 934, 937 (7th Cir. 1969) ("It is true that section 231(a)(3) does not specifically refer to intent, but it only applies to a person who 'commits or attempts to commit any act to obstruct, impede, or

---

[14] Citing *McHugh*, 2022 WL 296304, at *17; *Mostofsky*, 2021 WL 6049891, at *8–9; *Nordean*, 2021 WL 6134595, at *17; and *Gossjankowski*, 2022 WL 782413, at *3. Judge Berman Jackson also cited three out of district cases that reached the same result. 2022 WL 2237301, at *6, citing *United States v. Howard*, 21-cr-28 (PP), 2021 WL 3856290, at *11-12 (E.D. Wis. Aug. 30, 2021); *United States v. Phomma*, 561 F. Supp. 3d 1059, 1067-68 (D. Or. 2021); and *United States v. Wood*, 20-cr-56 (MN), 2021 WL 3048448, at *7-8 (D. De l. July 20, 2021).

interfere' with firemen or law enforcement officers."); *United States v. Mechanic*, 454 F.2d 849, 854 (8th Cir. 1971) (agreeing with *Foran* "that § 231(a)(3) must be construed to require intent"). Other judges of this district are in accord. *See Mostofsky*, 2021 WL 6049891, at *8 (rejecting overbreadth challenge to § 231(a)(3)); *Nordean*, 2021 WL 6134595, at *16-18 (§ 231(a)(3) is neither vague nor overbroad); *McHugh*, 2022 WL 296304, at *13 (same).

Those decisions are consistent with the applicable overbreadth principles. In the typical case, a litigant bringing a facial constitutional challenge "must establish that no set of circumstances exists under which the [law] would be valid," or the litigant must "show that the law lacks a plainly legitimate sweep." *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2387 (2021) (quotation omitted). In the First Amendment context a litigant must demonstrate that "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* (cleaned up). Refusing to enforce a statute because of overbreadth concerns is "strong medicine," and courts will refuse to enforce the statute on such grounds "only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech," *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).

Defendant St Cyr has given this Court no reason to depart from the unanimous holdings of other judges in this district and elsewhere; Section 231(a)(3) is neither vague nor unconstitutionally overbroad and should not be dismissed.[15]

---

[15] Nor should the Court credit Defendant St Cyr's argument that the separation of powers doctrine would force the Court to invalidate the entirety of Section 231(a)(3). Because the statute is neither vague nor overbroad, the Court need not conduct any rewriting, and thus, no separation of powers concern exists.

## II.    Counts Three and Four

Because the arguments contained in Defendant St Cyr's Motion to Dismiss Counts Three and Four, ECF No. 49, defy the plain text and history of 18 U.S.C. § 1752, Defendant St Cyr's motion should be denied. *See, e.g., United States v. McHugh*, 583 F. Supp. 3d 1, 32-35 (D.D.C. 2022). As Judges of this Court have held in numerous cases, the Vice President can—and did— "temporarily visit" the U.S. Capitol Building on January 6, 2021, which brings Defendant St Cyr's conduct within the plain sweep of Section 1752.

### A.  The Vice President can "temporarily visit" the U.S. Capitol.

Defendant St Cyr's argument that a Vice President cannot "temporarily visit" the U.S. Capitol Building—because he or she has an office there—is contrary to Section 1752's plain terms, purpose, and structure. The same argument has been rejected by every Judge in this District before whom it has been raised.[16] As Judge Amy Berman Jackson, among others, recently held: "This strained interpretation is inconsistent with both the text and the structure of the statute . . . This definition [of 'temporarily visiting'] obviously encompasses Vice President Pence's actions on January 6, 2021. He went to the Capitol with a discrete purpose: to certify the Electoral College votes, a process that by law is contemplated to take one day." *See United States v Williams*, No. 21-cr-168 (ABJ), 2022 WL 2237301, at *19 (D.D.C. June 22, 2022) (citing 3 U.S.C. § 15;

---

[16] *See, e.g., United States v. Griffin*, 549 F. Supp. 3d 49, 52-58 (D.D.C. 2021) (18 U.S.C. § 1752(a)(1)); *United States v. Mostofsky*, Case No. 21-cr-138 (JEB), 2021 WL 6049891, at *8-*13 (D.D.C. Dec. 21, 2021) (18 U.S.C. § 1752(a)(1)); *United States v. Nordean*, Case No. 21-cr-175 (TJK), 2021 WL 6134595, at *4-*12, *14-*19 (D.D.C. Dec. 28, 2021) (18 U.S.C. § 1752(a)(1); 2)); *United States v. Andries*, Case No. 21-cr-93 (RC), 2022 WL 768684, at *3-*17 (D.D.C. Mar. 14, 2022) (18 U.S.C. § 1752(a)(1); 18 U.S.C. § 1752(a)(2)); *United States v. Puma*, Case No. 21-cr-454 (PLF), 2022 WL 823079, at *4-*19 (D.D.C. Mar. 19, 2022) (18 U.S.C. § 1752(a)(1); 18 U.S.C. § 1752(a)(2)); *United States v. Bingert*, Case No. 21-cr-91 (RCL), 2022 WL 1659163, at *3-*11, *12-*15 (D.D.C. May 25, 2022) (18 U.S.C. § 1752(a)(1)).

*McHugh,* 583 F. Supp. 3d at 33-34 (reaching "a commonsense conclusion: the Vice President was 'temporarily visiting' the Capitol"); *see also United States v. Andries*, No. 21-cr-93 (RC), 2022 WL 768684, at *16 (D.D.C. Mar. 14, 2022) ("Vice President Pence was 'temporarily visiting' the Capitol on January 6, 2021 if he went to the Capitol for a particular purpose, including a business purpose, and for a limited time only.   Plainly he did.   He went to the Capitol for the business purpose of carrying out his constitutionally assigned role in the electoral count proceeding; he intended to and did stay there only for a limited time."); *United States v. Puma*, No. 21-cr-454 (PLF), 2022 WL 823079, at *17 (D.D.C. Mar. 19, 2022) (stating that under the plain language of Section 1752, the Vice President "was temporarily visiting the Capitol on January 6, 2021: he was there for a limited time only in order to preside over and participate in the Electoral College vote certification."); and *United States v. Bingert*, 21-cr-91(RCL), 2022 WL 1659163, at *28 (D.D.C. May 25, 2022) (calling the defendants' semantics games laughable).

To determine the meaning of a statute, the Court "look[s] first to its language, giving the words used their ordinary meaning." *Levin v. United States*, 568 U.S. 503, 513 (2013) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). The verb "visit" means, *inter alia,* "to go to see or stay at (a place) for a particular purpose (such as business or sightseeing)" or "to go or come officially to inspect or oversee."[17] Either definition describes the Secret Service protectee's activities on January 6. Vice President Pence was physically present at the U.S. Capitol for a particular purpose: he presided over Congress's certification of the 2020 Presidential Election, first in the joint session, and then in the Senate chamber. While not specifically alleged in the indictment, two other Secret Service protectees (members of the Vice President's immediate

---

[17] https://www.merriam-webster.com/dictionary/visit.

family), also came to the U.S. Capitol that day for a particular purpose: to observe these proceedings. Furthermore, as President of the Senate, Vice President Pence oversaw the vote certification. Given the presence of the Vice President (and his family members), the U.S. Capitol plainly qualified as a building where "[a] person protected by the Secret Service [was] … temporarily visiting." 18 U.S.C. § 1752(c)(1)(B).

Defendant St Cyr further argues that "the Vice President has a dedicated, permanent office reserved for their use in the Senate" and he therefore cannot temporarily visit his own office. (ECF No. 49 14-15.) But numerous judges have rejected this argument, and for good reason: Section 1752(c)(1)(B) defines the restricted area by reference to the location of the protectee—not his home or workplace. When Vice President Pence traveled to the U.S. Capitol on January 6 to oversee the Joint Session of Congress, he was "visiting" the building. And because Vice President Pence intended to leave at the close of the session, this visit was "temporar[y]." Moreover, the United States Capitol is not the Vice President's regular workplace; even if "there is some carveout in § 1752 for where a protectee normally lives or works, it does not apply to Vice President Pence's trip to the Capitol on January 6, 2021." *See, e.g., McHugh*, 583 F.Supp.3d at 33-34 (citing various dictionary definitions of "temporary" as "for a limited time" and finding that the Vice President can "temporarily visit" the U.S. Capitol); *Williams,* 2022 WL 2237301, at *20 (emphasis in original) ("Defendant insists that the Vice President could not have been 'temporarily *visiting'* the Capitol on January 6th because he regularly *works* there, and because he was in fact working there on January 6th. But defendant's simplistic assertion ignores not only the ordinary meaning of the statutory language, but also the structure of the definition in question . . . The language in 18 U.S.C. § 1752(a)(1) and (2) is plain and unambiguous: the term 'restricted building or grounds'

encompasses the United States Capitol, which the Vice President) was 'temporarily visiting' on January 6, 2021.") (citations omitted).

Such a "carveout," taken to its logical end, would undermine the government's ability to protect the President and Vice President by deterring and punishing individuals who seek unauthorized access to the President's or Vice President's location. It would restrict Section 1752(c)(1)(B)'s application to only locations outside the District of Columbia—on the view that any visit by the President or Vice President to a location within municipal limits cannot be "temporary" because they reside in the District of Columbia. It would provide more protection for Secret Service protectees in an airplane hangar or a park than in the Capitol Building.

Defendant St Cyr's position also defies Section 1752's clear purpose. *Cf. Genus Med. Techs. LLC v. United States Food & Drug Admin.*, 994 F.3d 631, 637 (D.C. Cir. 2021) ("[I]f the text alone is insufficient to end the inquiry, we may turn to other customary statutory interpretation tools, including structure, purpose, and legislative history.") (internal quotation marks and citation omitted). In enacting Section 1752, Congress sought to protect "not merely the safety of one man, but also the ability of the executive branch to function in an orderly fashion and the capacity of the United States to respond to threats and crises affecting the entire free world." *United States v. Caputo*, 201 F. Supp. 3d 65, 70 (D.D.C. 2016) (quoting *White House Vigil for ERA Comm. v. Clark*, 746 F.2d 1518, 1528 (D.C. Cir. 1984)). To that end, the statute comprehensively deters and punishes individuals who seek unauthorized access to the White House grounds and the Vice President's residence—fixed locations where the President and Vice President live and work, 18 U.S.C. § 1752(c)(1)(A); and also any other "building or grounds" where they (or other protectees) happen to be "temporarily visiting," 18 U.S.C. 1752(c)(1)(B). Construing the statutory provisions together, Section 1752(c)(1)(A) and (c)(1)(B) protects the President and Vice President in their

official homes and wherever else they go. Interpreting the statute as the defendant suggests would create a gap in Section 1752's coverage by removing areas, such as the U.S. Capitol, from protection. It could endanger the leaders of the Executive Branch even as they perform their official duties. That gap is both illogical and contrary to the statutory history of Section 1752, where, "at every turn," Congress has "*broadened* the scope of the statute and the potential for liability." *Griffin,* 549 F.Supp.3d at 56 (emphasis in original).

The cases cited by Defendant St Cyr —which involve either an arrest or conviction under Section 1752 at a place other than the U.S. Capitol Building—do not discuss the "temporarily visiting" language. *See* ECF No. 47 at 11 (citing *United States v. Bursey*, 416 F.3d 301 (4th Cir. 2005); *United States v. Junot,* 1990 WL 66533 (9th Cir. May 18, 1990) (unpublished). They lack relevance to this case. All the relevant considerations—plain language, statutory structure, and congressional purpose—foreclose Defendant St Cyr's crabbed reading of Section 1752(c)(1)(B). Therefore, this Court should reject it.

### B.  The Capitol Grounds were Restricted by the Secret Service

Defendant St Cyr argues that Counts Three and Four should be dismissed because they do not allege, nor can the government prove, that the USSS designated the "restricted area" under 18 U.S.C. § 1752.  (ECF No. 49 at 15-16.)  Her argument misconstrues the plain language of Section 1752.  In short, Section 1752 "prohibits persons from knowingly entering without lawful authority to do so in any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting." *Wilson v. DNC Servs. Corp.*, 417 F. Supp. 3d 86, 98 (D.D.C. 2019), *aff'd*, 831 F. App'x 513 (D.C. Cir. 2020).

To determine the meaning of a statute, the Court "look[s] first to its language, giving the words used their ordinary meaning." *Levin*, 568 U.S. at 513 (quoting *Moskal*, 498 U.S. at 108); *see Public Investors Arbitration Bar Association v. U.S. S.E.C.*, 930 F. Supp. 2d 55 (D.D.C., 2013)

(Howell, J.) ("a reviewing court must accord first priority in statutory interpretation to the plain meaning of the provision in question."). Where, as here, the statute in question's words "are unambiguous, the judicial inquiry is complete." *See Babb*, 140 S. Ct. at 1177 (internal quotation marks omitted). Section 1752's text is clear. It proscribes certain conduct in and around "any restricted building or grounds." *See* 18 U.S.C. § 1752(a). The statute provides three definitions for the term "restricted buildings and grounds," see § 1752(c)(1), including "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting," § 1752(c)(1)(B). By cross-reference, "person[s] protected by the Secret Service" includes the Vice President. § 1752(c)(2); *see* § 3056(a)(1). The proscribed conduct within a "restricted building or grounds" includes, as relevant here, knowingly and unlawfully entering or remaining, § 1752(a)(1) (Count Three), and knowingly and with intent to impede or disrupt government business, engaging in "disorderly or disruptive conduct" that "in fact, impedes or disrupts" government business," § 1752(a)(2) (Count Four).

The indictment alleges that, on January 6, 2021, the Vice President[18] was and would be visiting  the Capitol building or the Capitol grounds, and that some portion of the Capitol building and grounds was posted, cordoned off, or otherwise restricted—making it a "restricted building or grounds" under § 1752(c)(1). The indictment further alleges that Defendant knowingly and without lawful authority entered and remained in that restricted buildings and grounds, and that he knowingly and with the intent to impede or disrupt government business, engaged in disorderly conduct that resulted in a disruption to government business. In short, the allegations closely track the statutory language.

---

[18] On January 6, 2021, the Vice President was Mike Pence, and the Vice President is a person who is protected by the USSS.

Defendant St Cyr urges (ECF No. 49 at 15-16) the Court to import an extra-textual requirement that the USSS be required to designate the restricted area.  That argument fails on the merits. Section 1752 is directed not at the USSS, but at ensuring the protection of the President and the office of the Presidency. *See* S. Rep. 91-1252 (1970); *see also* Elizabeth Craig, *Protecting the President from Protest: Using the Secret Service's Zone of Protection to Prosecute Protesters*, 9 J. Gender Race & Just. 665, 668-69 (2006). Second, the legislative history in fact undercuts Defendant St Cyr's argument.  As she explains (ECF No. 49 at 15-16), an earlier version of the statute explicitly incorporated regulations promulgated by the Department of the Treasury (which at the time housed the USSS) governing restricted areas. *See United States v. Bursey*, 416 F.3d 301, 306-07 (4th Cir. 2005) (noting that definition of restricted area required interpreting Treasury regulations).

Nor is the literal application of the statute at odds with Congressional intent. The language of the statute is the best evidence of Congressional intent. *West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 84 (1991).  This statute was intended to ensure the safety of USSS protectees.  If Congress intended to give USSS sole authority to designate a restricted area, it could have written that into the statute or amended the statute to reflect that intent. In 1970, Congress enacted 18 U.S.C. § 1752 to include subsection (d), which gave authority to the Department of Treasury, which then oversaw USSS, to "prescribe regulations governing ingress or egress to such buildings and grounds and to posted, cordoned off, or otherwise restricted areas where the President is or will be temporarily visiting." Pub. L. 91-644, Title V, Sec. 18, 84 Stat. 1891-92 (Jan. 2, 1971).  Congress subsequently struck subsection (d) and did not replace it with language limiting the law enforcement agencies allowed to designate a restricted area. Pub. L. 109-177, Title VI, Sec. 602, 120 Stat. 192 (Mar. 9, 2006). Congress was clearly aware that the prohibitions in 18

U.S.C. § 1752 could turn on decisions made by USSS, but chose not to include that in the revised statute.

*Bursey* does not counsel a different result. In *Bursey*, the Fourth Circuit affirmed the defendant's conviction under 18 U.S.C. § 1752 for entering an airport hangar that was restricted by USSS working in tandem with local law enforcement. 416 F.3d 301.   Responding to the Bursey's claim that he was not advised the hangar was a federally restricted zone designated by USSS, the court found that the lower court's factual findings belied Defendant's claim because he had admitted that he was aware that the USSS coordinated security for the President at the hangar. *Bursey*, 416 F.3d at 309.   The court in *Bursey* did not address the issue of which law enforcement agencies may designate a restricted area, nor did it hold that only USSS is allowed to designate a restricted area.

As a factual matter, the USSS did participate in walking, observing, and ensuring the sufficiency of the restricted perimeter around the Capitol building and grounds on January 6, 2021. *See United States v. Herrera*, 21-cr-619 (BAH), Tr. 8/16/2022, pgs. 133-134.   The evidence will show that the U.S. Capitol Police established the restricted area, USSS approved of it, and the two agencies have a working relationship; in sum, a restricted had been established.   Counts Three and Four should not be dismissed.

**III.    Count Six**

Defendant St Cyr's motion to dismiss Count Six is without merit and should be denied. St Cyr contends Section 5104(e)(2)(G) is unconstitutionally vague and overbroad. The same meritless arguments recently were rejected by this Court and Judge Friedrich when they were raised by other January 6 defendants.

## A.  Section 5104(e)(2)(G) is Not Unconstitutionally Vague

Defendant St Cyr is incorrect when she asserts that Section 5104(e)(2)(G) is "unconstitutionally vague." [19]  (ECF No. 49 at 18.)  Her flawed argument should be rejected, as it was when raised by other January 6 rioters in *Nassif*, 2022 WL 4130841, at *7, and *Seitz*, No. 21-cr-279 (DLF), Dkt. No. 51 at 7–8.

Defendant St Cyr fails to overcome the strong presumption that Section 5104(e)(2)(G) passes constitutional muster.  *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963) ("The strong presumptive validity that attaches to an Act of Congress has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language.").  Section 5104(e)(2)(G) does not tie criminal culpability to "wholly subjective" terms such as "annoying" or "indecent" that are bereft of "narrowing context" or "settled legal meanings," *Williams*, 553 U.S. at 306, nor does it require application of a legal standard to an "idealized ordinary case of the crime," *Johnson*, 576 U.S. at 604. That the statute makes it unlawful to "willfully and knowingly … parade, demonstrate, or picket in any of the Capitol Buildings," gives rise to "no such indeterminacy." *Williams*, 553 U.S. at 306; *see also Nassif*, 2022 WL 4130841, at *7.  That is, the plain language prohibits an individual from engaging in disruptive conduct inside the Capitol

---

[19] As a general matter, one making such a facial vagueness challenge must demonstrate that the law is "impermissibly vague in all its applications"; one whose conduct is "clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Vill. of Hoffman Ests.*, 455 U.S. 489, 494–95 (1982).  St Cyr cannot surmount that demanding standard.  Where the facial challenge relies on a First Amendment theory, a facial challenge may be available where the challenger shows that the law in question "reaches a substantial amount of constitutionally protected conduct."  *See Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 940 (9th Cir. 1997) (citing *Kolender v. Lawson*, 461 U.S. 352, 359 n.8 (1983)).  Even assuming that is viable theory under governing law, *see Quigley v. Giblin*, 569 F.3d 449, 457–58 (D.C. Cir. 2009) (questioning the breadth of "First Amendment vagueness doctrine"), St Cyr's facial vagueness claim fails for the same reasons that her overbreadth challenge falls short.

building.  *See Bynum*, 93 F. Supp. 2d at 57–58 (explaining that Capitol Police regulation at issue in that case was unnecessary because Congress had provided "more than sufficient guidance" in Section 5104(e)(2)(G)'s statutory text).  While "it may be difficult in some cases to determine whether these clear requirements have been met," "'courts and juries every day pass upon knowledge, belief and intent—the state of men's minds—having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred.'" *Id.* (quoting *American Communications Ass'n, CIO v. Douds*, 339 U.S. 382, 411 (1950)).

As this Court explained when rejecting an identical argument that Section 5104(e)(2)(G) "does not define the offense so as to put ordinary people on notice of what is prohibited," *Nassif*, 2022 WL 4130841, at *6,

> The definition of demonstrate—"to make a public demonstration; esp. to protest against or agitate for something," Oxford English Dictionary (3d ed. 2005), or "to make a public display of sentiment for or against a person or cause," as by "students demonstrating for the ouster of the dictator," Webster's New International Dictionary (3d ed. 1993)—is not so vague as [defendant] contends. When read "in light of its neighbors," *McHugh I*, 2022 WL 296304, at *12, "parade" and "picket," it is clear that § 5104(e)(2)(G) prohibits taking part in an organized demonstration or parade that advocates a particular viewpoint—such as, for example, the view that the 2020 U.S. Presidential Election was in some way flawed.

Accordingly, this Court has already held, that "§ 5104(e)(2)(G) is not unconstitutionally vague on its face." *Id.* at *7.

## B.  Section 5104(e)(2)(G) is Not Unconstitutionally Overbroad

Section 5104(e)(2)(G) is not overbroad.  *See* Seitz, 21-cr-279 (DLF), Dkt. No. 51 at 12–14.  In the First Amendment context, as in others, "[f]acial challenges are disfavored." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008).  Facial overbreadth challenges—in which a defendant asserts that a statute, constitutionally applied to him, is nevertheless invalid because it would be unconstitutional in a "substantial number" of other cases,

id. at 449 n.6 (internal quotation marks omitted)—are even more exceptional. "'Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment,'" overbreadth is "'strong medicine' to be employed 'only as a last resort.'" *Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999) (quoting *New York v. Ferber*, 458 U.S. 747, 769 (1982)); cf. *Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (noting the "substantial social costs created by the overbreadth doctrine when it blocks application of a law to . . . constitutionally unprotected conduct") (emphasis omitted).

The Supreme Court has therefore "vigorously enforced the requirement that a statute's overbreadth be *substantial* . . . relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292. "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Rather, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Id.* at 801. And laws that are "not specifically addressed to speech" are far less likely to present such a danger. *Hicks*, 539 U.S. at 124; *see id.* (observing that "an overbreadth challenge" to such a law will "[r]arely, if ever, . . . succeed").

Defendant St Cyr's challenge fails that demanding standard.  Because "it is impossible to determine whether a statute reaches too far without first knowing what the statute covers," the "first step in overbreadth analysis is to construe the challenged statute." *Williams*, 553 U.S. at 293. The prohibition in Section 5104(e)(2)(G) presents "no ambiguity"; it "tells the citizen that it is unlawful for him" to parade, demonstrate, or picket inside the Capitol Building. *Jeanette Rankin Brigade*, 342 F. Supp. at 583. The operative verbs—parade, demonstrate, and picket—principally target conduct rather than speech, and those verbs are paired with the "willfully and knowingly"

scienter requirements, *see Williams*, 553 U.S. at 294 (focusing on scienter requirement in determining that statute was not overbroad). And the subsequent six words, "in any of the Capitol Buildings," makes clear that the statute prohibits conduct within a nonpublic forum, which cabins the overbreadth of which St Cyr complains. *Nassif*, 2022 WL 4130841, at *4. At the very least, Defendant St Cyr cannot show that Section 5104(e)(2)(G) is "substantial[ly]" overbroad relative to its "plainly legitimate sweep." *Washington State Grange*, 552 U.S. at 449 n.6 (internal quotation marks omitted).

Defendant St Cyr's prosecution—which involves physically trespassing into the restricted Capitol—is illustrative of the numerous constitutionally legitimate applications of the statute to conduct and unprotected speech. And far from showing a "realistic danger" of constitutionally problematic applications in other cases, *Taxpayers for Vincent*, 466 U.S. at 801, St Cyr fails to identify a single actual example of a prosecution based on protected speech. The limitations inherent in the crime of conviction, moreover, render the possibility of any such prosecutions marginal at best, and any such case could be the subject of an as-applied challenge. Nothing at all calls for the "strong medicine," *Los Angeles Police Dep't*, 528 U.S. at 39 (internal quotation marks omitted), of overbreadth invalidation.

Defendant St Cyr's citations to case law show the weaknesses of her overbreadth claim. First, she relies on *Bynum v. U.S. Capitol Police Bd.*, where Judge Friedman ruled that a Capitol Police regulation interpreting Section 5104(e)(2)(G)[20] that defined "demonstration activity" to include "holding vigils" and "sit-ins" swept too broadly because it "invited the Capitol Police to restrict behavior that is no way disruptive." 93 F. Supp. 2d at 53, 57. As an initial matter, *Bynum*'s invalidation of a Capitol Police regulation—which was applied to an individual who was denied

---

[20] At the time, the provision was Section 193(f)(b)(7).

permission to pray inside the Capitol building—does not inform the statutory challenge that Defendant St Cyr presses here.  Moreover, Judge Friedman in *Bynum* (and this Court in *Nassif*) concluded that the inside of the Capitol building is a nonpublic forum, where the government may restrict First Amendment activity if "the restrictions are 'viewpoint neutral' and 'reasonable in light of the purpose served by the forum.'" *Id.* at 56 (citing *Cornelius v. NAACP Legal Defense and Educational Fund*, 473 U.S. 788, 806 (1985)); *see also Nassif*, 2022 WL 4130841, at *4. He reasoned that, although the regulation went too far, Section 5104(e)(2)(G) itself set forth "legitimate purposes," *Bynum*, 93 F. Supp. 2d at 57, that were "aimed at controlling only such conduct that would disrupt the orderly business of Congress—not activities such as quiet praying, accompanied by bowed heads and folded hands," *id.* at 58. In short, Judge Friedman concluded that, unlike the regulation at issue in *Bynum*, the statute itself was not "substantial[ly]" overbroad relative to its "plainly legitimate sweep." *Washington State Grange*, 552 U.S. at 449 n.6 (internal quotation marks omitted); *see also Nassif*, 2022 WL 4130841, at *4.

Defendant St Cyr's reliance on *Lederman v. United States*, 89 F. Supp. 2d 29 (D.D.C. 2000), is likewise unavailing.  Like *Bynum*, *Lederman* involved a challenge to a Capitol Police regulation, and is of marginal, if any, relevance for that reason.  Furthermore, the regulation at issue there limited the areas within the Capitol *Grounds* in which individuals could engage in "demonstration activity," which in *Lederman* involved the distribution of leaflets in support of the arts. *Id.* at 32.  Relying in part on *Jeanette Rankin Brigade*, *supra*, Judge Roberts in *Lederman* concluded that the entire Capitol Grounds constitute a traditional public forum, *id.* at 37, and that although the regulation left open alternative channels for expression, its imposition of a total ban burdened more speech than necessary. *Id.* at 38–39. But Section 5104(e)(2)(G)'s prohibition applies only within the nonpublic forum inside the Capitol buildings, rendering the hypothetical

inapt. As Judge Friedrich held, the statute does not cover a substantial amount of protected expressive activity. *Seitz*, 21-cr-279 (DLF), Dkt. No. 51 at 14.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant St Cyr's motion to dismiss Counts One, Two, Three, Four, and Six lacks merit and should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Jacqueline Schesnol*
JACQUELINE SCHESNOL
Assistant United States Attorney
AZ Bar No. 016742
Capitol Riot Detailee
40 N. Central Ave., Suite 1800
Phoenix, AZ 85004-4449
(602) 514-7500
jacqueline.schesnol@usdoj.gov

*/s/ Eric Boylan*
ERIC W. BOYLAN
Assistant United States Attorney
Texas Bar No. 24105519
601 D Street N.W.
Washington, DC  20002
(202) 815-8608
eric.boylan@usdoj.gov