UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>YVONNE ST. CYR,<br>Defendant. | Criminal Action No. 22-185 (JDB) |

**MEMORANDUM OPINION & ORDER**

Defendant Yvonne St. Cyr is charged via indictment with six offenses related to the breach of the United States Capitol on January 6, 2021. St. Cyr has filed a motion seeking dismissal of several counts and a motion for transfer of venue. See Mot. to Dismiss Counts One, Two, Three, Four, and Six [ECF No. 49] ("Mot. to Dismiss"); Mot. for Transfer of Venue [ECF No. 50] ("Venue Mot."). The government has filed a notice pursuant to Federal Rule of Evidence 404(b) requesting the Court's permission to introduce evidence of St. Cyr's prior conviction for trespassing. See Gov't's 404(b) Notice [ECF No. 48] ("404(b) Notice"). For the reasons set forth below, the Court will deny St. Cyr's motion to dismiss and motion to transfer venue, and the Court will not permit the government to introduce evidence of St. Cyr's prior conviction at trial.

**Background**

According to the government, St. Cyr traveled to Washington, D.C. from Idaho in early January 2021 to protest the results of the November 2020 presidential election. See Gov't's Opp'n to Mot. to Dismiss [ECF No. 55] ("Opp'n to Mot. to Dismiss") at 3. On January 6, while St. Cyr was in Washington, the U.S. Congress was convened in the Capitol for a joint session to certify the electoral vote count. Aff. in Supp. of Criminal Compl. [ECF No. 1-1] ("Aff. in Supp.") at 1. The joint session began at approximately 1:00 p.m. and was supposed to continue throughout the afternoon. See id. However, in the early afternoon, a large crowd gathered outside the Capitol.

1

Id.  Despite the presence of barricades and U.S. Capitol Police ("USCP") attempting to keep the protesters out of the Capitol and away from the building, the crowd overwhelmed the USCP and forced their way into the Capitol around 2:00 p.m.  Id.  Shortly after, around 2:20 p.m., members of the House of Representatives and Senate, as well as then-Vice President Michael Pence, were forced to evacuate and effectively suspend the joint session.  Id.

Social media posts and video footage show St. Cyr inside the Capitol on January 6.  See Aff. in Supp. at 2–3.  The government asserts that St. Cyr reached the Capitol grounds around 2:00 p.m. and remained there until approximately 4:00 p.m.  Id. at 2; Opp'n to Mot. to Dismiss at 3.  Between approximately 2:15 and 2:30 p.m., the government alleges that St. Cyr was "at the front of the group of people up against the 'bike rack' style barricades, face-to-face with police officers" and she "pushed the barricades open, making her among the first rioters to breach the barricades on the West Plaza of the Capitol."  Opp'n to Mot to Dismiss at 4.  The government alleges that she then entered the "Lower West Terrace tunnel," where she witnessed others "assault[ing]" and "pushing against police officers guarding the doors into the Capitol."  Id. at 4–5.  St. Cyr "turned to the mob and shouted, 'We need fresh people; we need fresh people,'" and encouraged others "by yelling over and over, 'push.'"  Id. at 5.  St. Cyr later "entered the U.S. Capitol . . . through a broken window," where she "video recorded others who broke a window and called to the crowd outside to provide gas masks."  Id.; accord Aff. in Supp. at 2.

On May 25, 2022, a grand jury charged St. Cyr with six offenses via indictment: two counts of civil disorder and aiding and abetting, in violation of 18 U.S.C. §§ 231(a)(3) and 2 (Counts One and Two); entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Three); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Four); disorderly conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Five); and parading, demonstrating, or picketing in

a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Six).  See Indictment [ECF No. 37].

On January 9, 2023, St. Cyr filed a motion to dismiss five counts of the indictment, see Mot. to Dismiss, and a motion to transfer venue, see Venue Mot.  The government timely responded in opposition to both motions.  See Opp'n to Mot. to Dismiss; Gov't's Opp'n to Venue Mot. [ECF No. 53] ("Opp'n to Venue Mot.").  St. Cyr did not file replies in support of either motion.  Also on January 9, the government filed a notice pursuant to Federal Rule of Evidence 404(b) requesting the Court's permission to introduce evidence of St. Cyr's prior conviction for trespassing, which stemmed from her refusal to comply with a COVID-related mask mandate in an Idaho government health facility.  See 404(b) Notice at 1, 3–4.  St. Cyr timely opposed the government's request.  See Resp. to 404(b) Notice [ECF No. 54].  St. Cyr's motions and the government's request are now ripe for decision.

## Analysis

### I.     Motion to Dismiss

St. Cyr's first motion seeks dismissal of Counts One, Two, Three, Four, and Six of the indictment.  Mot. to Dismiss at 1.  St. Cyr acknowledges "that many district judges, including this Court, have denied similar motion[s] to dismiss" in January 6 cases.  Id. at 1 n.1 (collecting cases); cf. Opp'n to Mot. to Dismiss at 1–3 (same).  In fact, St. Cyr is aware that "[t]he arguments raised" in her motion "are substantially the same as those" rejected by this Court in recent decisions.  Mot. to Dismiss at 1 n.1.  Accordingly, St. Cyr raises these arguments "to preserve the record."  Id.

St. Cyr first moves to dismiss Counts One and Two of the indictment, which charge her with civil disorder in violation of 18 U.S.C. § 231(a)(3).[1]  Mot. to Dismiss at 5.  She argues that

---

[1] That statute imposes criminal penalties on

> [w]hoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident

3

§ 231(a)(3) is unconstitutionally vague because (1) the statutory phrase "any act to obstruct, impede, or interfere" covers expressive conduct, id. at 7; (2) the phrase "incident to and during the commission of a civil disorder" could apply to "any tumultuous public gathering to which police might be called," id. at 7–8; and (3) the statute contains no scienter requirement that could mitigate its vagueness, id. at 8–9.  She also argues that § 231(a)(3) is overbroad because it criminalizes speech protected by the First Amendment, id. at 10–11, and suggests that the Court would need to impermissibly rewrite the statute to save it from constitutional invalidity, id. at 11–12.  As St. Cyr recognizes, this Court and others have already rejected these same arguments raised by January 6 defendants.  See, e.g., United States v. McHugh, 583 F. Supp. 3d 1, 23–29 (D.D.C. 2022); United States v. Nordean, 579 F. Supp. 3d 28, 56–58 (D.D.C. 2021).  St. Cyr makes no new arguments that persuade the Court to change course.  Accordingly, the Court adopts by reference its reasons for rejecting these arguments challenging § 231(a)(3) in McHugh.

St. Cyr next moves to dismiss Counts Three and Four, which charge her with violations of 18 U.S.C. § 1752(a)(1) and (2).[2]  Both provisions require that St. Cyr took actions in "any restricted building or grounds," which, as relevant here, is defined as "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1)(B).  She argues that her charged conduct does not fall within either provision because (1) Vice President Pence was not "temporarily visiting" the Capitol, Mot. to Dismiss at 13–15, and (2) the Secret

---

        to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function.

18 U.S.C. § 231(a)(3).

[2] In relevant part, 18 U.S.C. § 1752 prohibits "knowingly enter[ing] or remain[ing] in any restricted building or grounds without lawful authority to do so," § 1752(a)(1), and "knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engag[ing] in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions," id. § 1752(a)(2).

Service did not "restrict" the Capitol or its grounds on January 6, 2021, id. at 15–17.  Again, this Court has rejected these same arguments on numerous prior occasions.  See United States v. Neely, Crim. A. No. 21-642 (JDB), 2023 WL 1778198, at *2–4 (D.D.C. Feb. 6, 2023) (noting "the chorus of January 6 defendants" who have unsuccessfully advanced these arguments); United States v. Bozell, Case No. 21-CR-216 (JDB), 2022 WL 474144, at *8–9 (D.D.C. Feb. 16, 2022) (rejecting these argument and citing other courts that have also done so); United States v. Sheppard, Crim. A. No. 21-203 (JDB), 2022 WL 17978837, at *4 (D.D.C. Dec. 28, 2022); McHugh, 583 F. Supp. 3d at 29–35.  The Court adopts the reasoning from these prior decisions rejecting identical arguments.

Finally, St. Cyr asks the Court to dismiss Count Six, which charges her with parading, picketing, or demonstrating in the Capitol in violation of 40 U.S.C. § 5104(e)(2)(G).  Mot. to Dismiss at 17.  She first argues that the provision is unconstitutionally vague because it offers "no clarity or specificity as to what is meant by parading, picketing, or demonstrating" and therefore "fails to put ordinary people on notice of what is prohibited and encourages arbitrary and discriminatory enforcement."  Id. at 18–21.  She then contends that the provision is unconstitutionally overbroad because it "cover[s] enormous swaths of protected First Amendment activity."  Id. at 21–26.  Again, this Court has already declined to adopt either of these arguments when previously raised by January 6 defendants.  See Sheppard, 2022 WL 17978837, at *5–6; United States v. Nassif, Crim. A. No. 21-421 (JDB), 2022 WL 4130841, at *2–7 (D.D.C. Sept. 12, 2022).  The Court rejects St. Cyr's arguments and adopts the reasoning from these prior decisions.

Accordingly, the Court will deny St. Cyr's motion to dismiss Counts One, Two, Three, Four, and Six.

II.     **Motion for Change of Venue**

St. Cyr filed a motion for a change of venue, requesting that her trial be transferred to the District of Idaho, where she resides, to the Northern District of Georgia, which she identifies as "a comparable district to the District of Columbia,"[3] or to another venue. Venue Mot. at 1. This Court has denied every change-of-venue motion filed in a January 6 case before it. See Sheppard, 2022 WL 17978837, at *6–7; Nassif, 2022 WL 4130841, at *8–10; United States v. Brock, Crim. A. No. 21-140 (JDB), 2022 WL 3910549, at *4–8 (D.D.C. Aug. 31, 2022). In fact, as the government notes, every judge in this District to have ruled on such a motion in a January 6 prosecution has denied it. Opp'n to Venue Mot. at 1 n.1 (collecting cases). St. Cyr concedes that her motion is "substantially similar to the venue-transfer motion filed before this Court" in Sheppard, which the Court denied, Venue Mot. at 2 n.2; see Sheppard, 2022 WL 17978837, at *6–7, and that it is also "largely based on [a] similar motion[]" that the Court denied in McHugh, Venue Mot. at 2 n.2; see Min. Entry, McHugh, Crim. A. No. 21-453 (JDB) (D.D.C. May 4, 2022). Upon review, her arguments are virtually identical to those the Court rejected in Sheppard. Accordingly, the Court adopts its reasoning from that case and will deny St. Cyr's motion for transfer of venue.

### III.     404(b) Notice

Federal Rule of Evidence 404(b) makes evidence of "any other crime, wrong, or act" inadmissible at trial to prove that "on a particular occasion the person acted in accordance with" a certain character trait, but it allows such evidence for other permissible purposes, such as proving motive, intent, knowledge, or absence of mistake. Fed. R. Evid. 404(b)(1)–(2). The Court's

---

[3] St. Cyr attaches to her motion a survey that compared polls of prospective jurors in the Northern District of Georgia and D.C. See Select Litigation Survey [ECF No. 50-1]. It selected the Northern District of Georgia because it is "the division with the closest approximation of the racial composition of the District of Columbia." Id. at 5–6. But St. Cyr's motion offers no indication as to why a pollster's reasons for selecting this comparison district are relevant to a court's selection of alternate venues. Regardless, the Court considered this same survey when denying a nearly identical venue motion in Sheppard. See Select Litigation Survey, Sheppard, Crim. A. No. 21-203 (JDB) (D.D.C. Oct. 21, 2022), ECF No. 38-1.

analysis in the Rule 404(b) context proceeds in two parts. See United States v. Miller, 895 F.2d 1431, 1435 (D.C. Cir. 1990). "First, the Court considers whether the evidence is 'probative of some material issue other than character.'" United States v. Fitzsimons, 605 F. Supp. 3d 92, 98 (D.D.C. 2022) (quoting United States v. Clarke, 24 F.3d 257, 264 (D.C. Cir. 1994)). "Then, if the evidence is relevant for a permissible purpose, the Court should conduct a balancing test under Rule 403 and exclude the evidence if its probative value 'is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" Id. (quoting United States v. King, 254 F.3d 1098, 1100 (D.C. Cir. 2001)).

The government seeks the Court's permission to introduce evidence of St. Cyr's prior act of trespassing. 404(b) Notice at 1. According to its notice, on December 8, 2020—less than a month before January 6, 2021—St. Cyr was arrested at the "Central District Health" facility, a "government/public building" in her home state of Idaho. Id. at 3. St. Cyr went to the facility to attend a meeting about a revised draft of a public health order relating to mask mandates. Id.; see Resp. to 404(b) Notice at 2 (explaining that St. Cyr was attending "an in-person meeting to discuss whether to impose a mask mandate"). Face masks were required inside the facility, but St. Cyr refused to wear her face mask over her nose and mouth. 404(b) Notice at 3–4. She was approached by two police officers who told her to put on her mask, Resp. to 404(b) Notice at 2, and warned her that continued noncompliance would result in arrest, 404(b) Notice at 4. She was ultimately arrested for the misdemeanor offense of trespassing and was later tried by a jury and convicted. Id.

Per the government, St. Cyr's "prior arrest for trespassing at a government/public building is probative of her intent, knowledge, absence of mistake, or lack of accident in the present case." 404(b) Notice at 6. The government's notice offers minimal argument but claims that because St. Cyr "has been arrested in the past for refusing to obey commands to leave a government/public

7

building where she was not allowed[,] . . . her 'defense' that she did not know she could be in/at the Capitol or that she was only in the Capitol to charge her phone is questionable." Id. Hence, the government seeks to admit evidence of her prior crime to show that "her actions were not the result of inadvertence, mistake, or accident." Id.

St. Cyr counters that her prior trespassing conviction "does not demonstrate anything about [her] intent at the Capitol on January 6th, 2021." Resp. to 404(b) Notice at 5. She explains that "[t]he critical issue in the Idaho state misdemeanor case was that [she] refused to wear a mask, a condition precedent to her entry of the location, and not that the building was a government building." Id. at 4. She thus argues that "[i]t is hard to see the probative value of Ms. St. Cyr's refusal to wear a mask at a public meeting, other than 'to prove that the defendant is a person of bad character and thus predisposed to commit the crime for which [s]he is on trial,'—the exact inference prohibited by Rule 404(b)." Id. (quoting United States v. Foskey, 636 F.2d 517, 523 (D.C. Cir. 1980)).

The Court agrees with St. Cyr that her prior conviction has very little probative value, if any, for a permissible purpose. For one, her "refus[al] to obey commands to leave" a public health facility in Idaho, 404(b) Notice at 6, has no bearing on whether she knew she was not allowed to be inside the Capitol Building a month later and two thousand miles away. Moreover, St. Cyr was allowed inside the health facility while it was holding a public event—she just was not allowed to be there without wearing a face mask. Thus, the underlying circumstances that led to her prior trespassing arrest hardly resemble the circumstances surrounding her conduct in the Capitol on January 6.

Because it sheds no light on whether St. Cyr was in the Capitol as a "result of inadvertence, mistake, or accident," 404(b) Notice at 6, evidence of St. Cyr's prior arrest would serve only to imply that she is type of person who disobeys authority and gets arrested for actions that are

8

typically associated with certain political leanings. But that is an impermissible character inference, and "[c]onvictions are [not] supposed to rest . . . on evidence of other, unrelated bad acts suggesting nothing more than a tendency or propensity to engage in criminality." United States v. Sheffield, 832 F.3d 296, 307 (D.C. Cir. 2016) (quoting United States v. McGill, 815 F.3d 846, 878 (D.C. Cir. 2016)). Thus, this prior act fails the first step of the 404(b) analysis because it is not legitimately "probative of some material issue other than character." Clarke, 24 F.3d at 264.[4]

Even if St. Cyr's prior conviction were probative of a relevant issue such as her knowledge or intent, the Court would conclude that it fails the second step of the 404(b) analysis because it is highly prejudicial and would be, at most, minimally probative. Under Rule 403, the Court may exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." King, 254 F.3d at 1100 (quoting Fed. R. Evid. 403). Although "Rule 403 should be applied infrequently and cautiously," "it is well-settled that . . . unfair prejudice results from '[e]vidence that appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or triggers other mainsprings of human action.'" Robertson v. McCloskey, 680 F. Supp. 412, 413 (D.D.C. 1988) (quoting 1 J. Weinstein & M. Berger, Weinstein's Evidence, ¶ 403[02] at 403–27, ¶ 403[03] at 403–33–36 (1986)). St.

---

[4] Even the phrasing of the government's notice suggests a misleading framing of this past act that serves the purpose of drawing an impermissible inference of St. Cyr's bad character. The government's notice opens with a request for the admission of "St Cyr's prior act of trespassing at a government building." 404(b) Notice at 1. A reasonable reader—particularly one familiar with the charges against St. Cyr in this case—would suspect that she had previously entered a government building without authorization. A few pages later, the government broadly explains that she was "arrested . . . for trespassing when she refused to vacate th[e] premises" of "a government/public building" "as directed by law enforcement." Id. at 3. Again, this evokes similar assumptions. Only at this point does the government explain that St. Cyr was attending a public meeting—i.e., she was permitted to be inside the building—and that her act of "trespassing" was the violation of a mask mandate in public spaces. Id. at 3–4. Although it is not technically false, the Court finds it misleading to say that St. Cyr was arrested for "trespassing at a government building," id. at 1 (emphasis added); more accurately, she was arrested for trespassing (because she would not wear a face mask) while she was at a government building. As St. Cyr puts it, "[t]hat her refusal to wear a mask happened to occur at a 'government/public building' is entirely incidental to the trespassing in that case." Resp. to 404(b) Notice at 4–5. In short, the "trespassing" was not unauthorized presence in a government building—as is the case here—but simply failure to wear a face mask as directed.

Cyr's prior conviction is prejudicial in at least two ways. First, it suggests to the jury that she is not a law-abiding citizen and is therefore more likely to be guilty of the charged offenses. Second, it injects the divisive and politicized issue of St. Cyr's opposition to mask wearing into the trial. See, e.g., L.T. v. Zucker, No. 1:21-CV-1034 (LEK/DJS), 2021 WL 4775215, at *1 (N.D.N.Y. Oct. 13, 2021) ("Mask mandates and the wearing of masks generally is an issue that has divided an already-polarized American public."). The Court would therefore exclude evidence of her prior conviction under Rule 403 even if it were probative of a material issue other than character.

* * *

For the foregoing reasons, upon consideration of defendant Yvonne St. Cyr's [49] motion to dismiss counts one, two, three, four, and six of the indictment, [50] the defendant's motion to transfer venue, [48] the government's Federal Rule of Evidence 404(b) notice, and the entire record herein, and for the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that [49] the defendant's motion to dismiss is **DENIED**; it is further

**ORDERED** that [50] the defendant's motion to transfer venue is **DENIED**; and it is further

**ORDERED** that [48] the government's Rule 404(b) request to introduce evidence of St. Cyr's prior conviction for trespassing is **DENIED**.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: February 22, 2023