UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| **v.** : | |
| : | Case No: 22-cr-185 (JDB) |
| : | |
| **YVONNE ST CYR,** : | |
| : | |
| **Defendant.** : | |

### UNITED STATES' MOTION IN LIMINE REGARDING
### PUBLIC-AUTHORITY OR ENTRAPMENT-BY-ESTOPPEL DEFENSES

Based on the proposed jury instruction filed by defendant St Cyr on March 3, 2023, and exhibits the defendant has disclosed to the government, it appears the defendant intends to introduce a public-authority or an entrapment-by-estoppel defense. As an initial matter, the defendant has failed to provide notice of a public-authority defense as required by Fed. R. Crim. P. 12.3; therefore, she is precluded from presenting it at trial. But substantively, the defendant will not be able to present evidence to establish a good faith belief that her conduct on January 6, 2021, represented the exercise of public authority. Therefore, she will not be entitled to present this issue in her opening statement, to present evidence of it, nor to argue it at the close of the case, and she will not be entitled to a jury instruction on this defense.

Similarly, the defendant should be prohibited from making arguments or attempting to introduce non-relevant evidence that former-President Trump gave permission for the defendant to attack the U.S. Capitol. With respect to entrapment, St Cyr cannot show that Mr. Trump advised her that the criminal statutes she is alleged to have violated did not apply to her conduct. As to public authority, St Cyr cannot show that Mr. Trump had the authority to empower St Cyr

to engage in criminal conduct on January 6, 2021. And with respect to neither defense can St Cyr show that her reliance on the statements of Mr. Trump was objectively reasonable.

This Court should reject St Cyr's apparent attempt to deflect responsibility. The two narrow affirmative defenses St Cyr appears to invoke—public authority and entrapment by estoppel—have no application here, and she should be precluded from raising them at trial.

## I.   FACTUAL BACKGROUND

On January 6, 2021, St Cyr traveled to the U.S. Capitol Building in the early afternoon and entered the Capitol grounds. She was at the front of the crowd that breached the law enforcement lines that day.  St Cyr entered the Capitol building at the Lower West Terrace tunnel, the site of the most brutal fighting of the day.  After remaining inside the double doors of the entrance for approximately 12 minutes, police physically removed her.  One minute later, she reentered the tunnel and climbed up onto a ledge, where she remained for 24 minutes, at times calling for "fresh people" and encouraging others in the mob to "push, push, push."  The defendant only left the tunnel when police used a flagpole to direct her out, as verbal commands and chemical spray did not make her comply.  From there, she climbed through a broken window into a sente office.  She only left there when police used some type of chemical spray.

Based on this conduct, defendant St Cyr is charged with two counts of civil disorder, entering/remaining on restricted grounds, disorderly conduct, and parading/picketing in a Capitol building.   Jury trial will begin on March 6, 2023.

## II.   ARGUMENT

While St Cyr has not noticed a defense of public authority or entrapment-by-estoppel, based on her proposed jury instructions and exhibits, it appears those will be her defenses.  As a matter of law, neither defense could apply on these facts, and so she can raise neither at trial.

The entrapment-by-estoppel defense applies only if the defendant was "actively misled . . . about the state of the law defining the offense," and relied on that misleading advice. *United States v. Cox*, 906 F.3d 1170, 1191 (10th Cir. 2018). No such advice was given to St Cyr on or before January 6. The public-authority defense, meanwhile, applies only to a "defendant who knows the conduct he has been authorized to commit is illegal," but believes he is acting as an agent of a government official who possessed actual authority to order his conduct. *United States v. Alvarado*, 808 F.3d 474, 485 (11th Cir. 2015). Here, no executive official had actual authority to ask St Cyr to break police lines, enter the Capitol at the tunnel or senate office, or encourage rioters to assault police. Both defenses also require that the defendant's reliance or belief be *reasonable*. Even if St Cyr somehow believed that the statutes she is now charged with had been interpreted to permit her conduct, that belief would not be remotely reasonable.

The Court should therefore preclude the defenses in advance of trial. "In a variety of procedural contexts, the vast majority of cases have held, as a matter of law, that the defense was unavailable on the facts of the case." *United States v. Conley*, 859 F. Supp. 909, 926 (W.D. Pa. 1994). Accordingly, courts have routinely rejected either jury instructions or requests to put on evidence by defendants whose proffered evidence fails, as a matter of law, to meet the defenses' requirements. *E.g.*, *United States v. Nichols*, 21 F.3d 1016, 1018 (10th Cir. 1994) (affirming denial of motion to appoint psychological expert to testify in support of entrapment by estoppel defense); *United States v. Weitzenhoff*, 35 F.3d 1275, 1290 (9th Cir. 1993) (upholding refusal to instruct jury on entrapment by estoppel defense); *United States v. Brebner*, 951 F.2d 1017, 1024-27 (9th Cir. 1991) (affirming exclusion of evidence purporting to raise the defense as immaterial as a matter of law); *United States v. Etheridge*, 932 F.2d 318, 320-21 (4th Cir.1991) (order granting motion in limine precluding evidence upheld).

    **A.**    **No Executive official could empower St Cyr, explicitly or implicitly, to commit the criminal conduct she engaged in on January 6.**

"To win an entrapment-by-estoppel claim, a defendant criminally prosecuted for an offense must prove (1) that a government agent actively misled him about the state of the law defining the offense; (2) that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense; (3) that the defendant actually relied on the agent's misleading pronouncement in committing the offense; and (4) that the defendant's reliance was reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation." *United States v. Chrestman*, 525 F. Supp. 3d 14, 31 (D.D.C. 2021) (Howell, C.J.) (quoting *United States v. Cox*, 906 F.3d 1170, 1191 (10th Cir. 2018).

In *Chestman*, Chief Judge Howell rejected an entrapment-by-estoppel argument raised by a January 6 defendant charged, like defendant here, with, *inter alia,* violations of 18 U.S.C. § 231(a)(3) and 18 U.S.C. § 1512(c)(2). That reasoning would apply fully to a similar defense presented by defendant St Cyr:

> January 6 defendants asserting the entrapment by estoppel defense could not argue that they were at all uncertain as to whether their conduct ran afoul of the criminal law, given the obvious police barricades, police lines, and police orders restricting entry at the Capitol. Rather, they would contend … that the former President gave them permission and privilege to the assembled mob on January 6 to violate the law.
>
> * * * *
>
> Setting aside the question of whether such a belief was reasonable or rational, [precedent] unambiguously forecloses the availability of the defense in cases where a government actor's statements constitute "a waiver of law" beyond his or her lawful authority…. Just as … no Chief of Police could sanction murder or robbery, notwithstanding this position of authority, no President may unilaterally abrogate criminal laws duly enacted by Congress as they apply to a subgroup of his most vehement supporters. Accepting that premise, even for the limited purpose of immunizing defendant and others similarly situated from criminal

>liability, would require this Court to accept that the President may prospectively shield whomever he pleases from prosecution simply by advising them that their conduct is lawful, in dereliction of his constitutional obligation to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. That proposition is beyond the constitutional pale, and thus beyond the lawful powers of the President. Even more troubling than the implication that the President can waive statutory law is the suggestion that the President can sanction conduct that strikes at the very heart of the Constitution and thus immunize from criminal liability those who seek to destabilize or even topple the constitutional order. In addition to his obligation to faithfully execute the laws of the United States, including the Constitution, the President takes an oath to "preserve, protect and defend the Constitution." U.S. Const. art. II, § 1, cl. 8.

*Chrestman*, 525 F. Supp. 3d 14, 32–33 (some internal punctuation omitted).

"[E]ntrapment by estoppel is a defense rather than an evidentiary objection and, accordingly, should have been raised prior to trial." *United States v. Colon Ledee*, 967 F. Supp. 2d 516, 520 (D.P.R. 2013). At the very least, the government requests the Court to inquire before trial if the defendant intends to either advance a defense of entrapment by estoppel or present any argument or evidence, the purpose of which would be to support such a defense. If the answer is anything but an unqualified "no," the Court should direct the defendant to make an offer of proof of such evidence and articulate why the defense is legally tenable notwithstanding Chief Judge Howell's explanation that it could not be. Absent an express ruling by the Court permitting such evidence or argument, the Court should prohibit the defendant from making arguments or attempting to introduce evidence that former-President Trump authorized the defendant's conduct at the Capitol.

Mr. Trump did not have the authority to explicitly permit or authorize the criminal conduct St Cyr engaged in—civil disorder, unlawful entry and disorderly conduct—on January 6. As Chief Judge Howell wrote last year in rejecting the idea of an entrapment-by-estoppel defense for January 6 defendants:

>[A President] cannot, in keeping with his constitutional function and his

5

> responsibilities under Article II, lawfully permit actions that directly undermine the Constitution. Thus, a President cannot, within the confines of his constitutional authority, prevent the constitutionally mandated certification of the results of a Presidential Election or encourage others to do so on his behalf, nor can he direct an assault on the coequal Legislative branch of government. Were a President to attempt to condone such conduct, he would act *ultra vires* and thus without the force of his constitutional authority. . . . Put simply, even if former President Trump in fact [explicitly directed the rioters' actions,] his statements would not immunize defendants charged with offenses arising from the January 6 assault on the Capitol from criminal liability.

*Chrestman*, 525 F. Supp. 3d at 32-33.

This is not the first time that courts in this district have heard the defense that high-ranking government officials authorized criminal misconduct. Thirty years ago, the D.C. Circuit considered an asserted defense not unlike that made by St Cyr. In the wake of the Iran-Contra scandal, Oliver North faced criminal prosecution for conduct that North said he had been directed to engage in by the National Security Advisor to President Reagan, with Reagan's acquiescence or approval. North was a high-ranking government official indisputably working on behalf of the Administration; his superior had not only condoned but engaged in similar misconduct; and his superior reported directly to the President. North subpoenaed the then-former President to be a witness at his trial. North also requested that the trial court use this jury instruction at his trial: "If you find that . . . North acted in good faith on a superior's apparent authorization of his action, and that his reliance was reasonable based on the facts as he perceived them, that is a complete defense . . . ." *United States v. North*, 910 F.2d 843, 879 (D.C. Cir. 1990) (per curiam), *opinion withdrawn and superseded in part on reh'g*, 920 F.2d 940 (D.C. Cir. 1990).

The D.C. Circuit flatly rejected North's claim that he could raise a good-faith defense based on the apparent or implied authorization by his superiors in the Executive Branch:

> North's suggested instruction, quoted above, goes so far as to conjure up the notion of a "Nuremberg" defense, a notion from which our criminal justice

6

> system, one based on individual accountability and responsibility, has historically recoiled. In the absence of clear and comprehensible Circuit authority that we must do so, we refuse to hold that following orders, without more, can transform an illegal act into a legal one.

*Id.* at 881. The Court similarly concluded that whether North "was following President Reagan's orders" was "immaterial" to whether North intended to "corruptly" obstruct Congress under 18 U.S.C. § 1505. *Id.* at 884. The Court likewise rejected North's "stunning" idea that he could "escape the criminal consequences of his otherwise unlawful acts merely by asserting that his reason for committing the acts was that he was 'following orders.'" *Id.* at 883-84.

Fifteen years earlier, the D.C. Circuit did not even entertain the idea that the president can lawfully authorize an individual to obstruct justice or Congress when it would have most obviously applied. Three former high-ranking officials in the Nixon Administration were convicted of obstruction of justice, conspiracy, and perjury in connection with the Watergate scandal. *See United States v. Haldeman*, 559 F.2d 31, 51 (D.C. Cir. 1976). President Nixon had spoken directly and privately with several of the defendants and directed or at least acquiesced in much of their illegal conduct. *See id.* at 57-59. Yet neither the district court nor the D.C. Circuit apparently contemplated that Nixon's involvement in the Watergate cover-up could somehow immunize the participants from later prosecution. *Id.* at 84-88; *United States v. Mitchell*, 385 F. Supp. 1190 (D.D.C. 1974) (district court opinion). Indeed, the district court (later affirmed on appeal) thought so little of Nixon's importance to his subordinates' trial that it denied a continuance that would have allowed Nixon to testify, on the ground that his testimony was largely immaterial or cumulative to the defendants' case. *Mitchell*, 385 F. Supp. at 1192-93.

St Cyr's apparent claim of public authorization is weaker than North's (unsuccessful)

claim in virtually every respect. She has no personal connection to any of the individuals who she asserts gave her authority. She is not a government official, let alone a government official engaged in high-level national security work. Instead, she is a member of the public who appears to claim that (1) she saw tweets of the former president, including tweets that read "Big protest in D.C. on January 6th. Be there, will be wild!" "JANUARY SIXTH, SEE YOU IN DC!" "The BIG Protest Rally in Washington, DC, will take place at 11.00 A.M. on January 6th. Locational details to follow. StopTheSteal!" and other tweets regarding election fraud, legislators, and the Vice President; (2) she went to a rally and heard the then-President continue to make debunked claims of election fraud.

Thus, even if President Trump had explicitly called for St Cyr to engage in the charged criminal conduct, that cannot underlie an entrapment-by-estoppel or public-authority defense.

    **B.**    **There is no available entrapment-by-estoppel defense, because St Cyr cannot point to an interpretation of the statutes she is charged with violating on which he reasonably relied.**

Courts have narrowly confined the entrapment-by-estoppel defense. The Supreme Court first adopted a due process defense to entrapment by public officials in *Raley v. Ohio*, 360 U.S. 423 (1959). In *Raley*, the Supreme Court set aside the convictions of three individuals who refused to answer the questions of the Ohio Un-American Activities Commission, in reliance on inaccurate representations by the Commission "that they had a right to rely on the privilege against self-incrimination" under the Ohio Constitution. 360 U.S. at 425. The Court held that the convictions violated the Fourteenth Amendment's Due Process Clause because they involved "the most indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State clearly had told him was available to him." *Id.* at 438. The Court emphasized that the Commission's advice constituted "active misleading" as to the contours of that "vague and undefined" area of law. *Id.* at 438.

A few years later, the Court revisited the subject in *Cox v. Louisiana*, 379 U.S. 559 (1965). *Cox* reversed the conviction of a protester who had led a group of 2,000 in a civil rights march across the street from a courthouse and was later prosecuted for violating an anti-picketing statute prohibiting demonstrations "near" a courthouse. 379 U.S. at 560, 564-65. The statute did not define that term. *Id.* at 560. The protestors had been "affirmatively told" by "the highest police officials of the city, in the presence of the Sheriff and Mayor," that protesting across the street from the courthouse was lawful under that statute. *Id.* at 571. The Court determined that the statute's ambiguous term "near" necessarily "foresees a degree of on-the-spot administrative interpretation by officials charged with responsibility for administering and enforcing it," and thus found that the demonstrators "would justifiably tend to rely on [the police's] administrative interpretation of how 'near' the courthouse a particular demonstration might take place." *Id.* at 568-69. The Court concluded that the local officials' interpretation of "near" was a "limited administrative regulation of traffic" that the protestors reasonably relied on. *Id.* at 569. But it also made clear that a defendant cannot reasonably rely on a law enforcement official's attempt to provide "a waiver of law," which the Court described as "beyond the power of the police." *Id.*

Distilling these cases, recent case law has limited the entrapment-by-estoppel defense to the narrow circumstances in which a defendant reasonably relies on an interpretation of a vague statute that, if accurate, would render the defendant's conduct non-criminal. "To win an entrapment-by-estoppel claim, a defendant criminally prosecuted for an offense must prove (1) that a government agent actively misled him about the state of the law defining the offense; (2) that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense; (3) that the defendant actually relied on the agent's misleading

9

pronouncement in committing the offense; and (4) that the defendant's reliance was reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation." *Cox*, 906 F.3d at 1191; *United States v. Burrows*, 36 F.3d 875, 882 (9th Cir. 1994) ("This defense applies when [1] a government official [2] tells a defendant that certain conduct is legal and the defendant commits what would otherwise be a crime [3] in reasonable reliance on the official's representation." (quoting *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1368 n.18 (11th Cir. 1994)); *United States v. Neville*, 82 F.3d 750, 761 (7th Cir. 1996) ("[W]e have required that [1] the government official "actively mislead the defendant; and that the defendant's reliance be [2] actual and [3] reasonable in light of the identity of the agent, the point of law represented, and the substance of the misrepresentation.").  Last year, Chief Judge Howell adopted *Cox*'s four-part test in preliminarily rejecting a Capitol riot defendant's claim to a defense similar to St Cyr's.  *See Chrestman*, 525 F. Supp. 3d at 33 (adopting *Cox*'s four-part test for entrapment by estoppel defense).

St Cyr cannot make out an entrapment-by-estoppel defense. No official provided an interpretation of the law covering St Cyr's alleged criminal conduct, thereby assuring St Cyr that his conduct was legal. Moreover, assuming St Cyr relied on Mr. Trump's words to commit theft and obstruction of Congress, that reliance was objectively unreasonable.

  **1.**  **St Cyr identifies no witness who "actively misled" her by interpreting a law in a manner indicating that her criminal conduct was non-criminal.**

In his speech on January 6, 2021, regardless whatever else he said, Mr. Trump did not purport to interpret the scope of the statutes St Cyr is charged with violating. Said another way, Mr. Trump did not "affirmatively assure[] the defendant that certain conduct [was] legal." *United States v. Howell*, 37 F.3d 1197, 1204 (7th Cir. 1994); *United States v. Troncoso*, 23 F.3d 612, 615 (1st Cir. 1994) (defense fails absent advice from official that conduct "was actually

10

legal").

Mr. Trump did not state that the U.S. Capitol grounds were no longer "restricted" under 18 U.S.C. § 1752(a); Mr. Trump did not purport to reinterpret a specific criminal statute to render St Cyr's conduct non-criminal. He therefore did not "actively mis[lead]" St Cyr "about the state of the law defining the offense." *Cox*, 906 F.3d at 1191. St Cyr has not identified anyone else who would have authority to do so who did so either. As Chief Judge Howell observed last year, an entrapment-by-estoppel defense by a January 6 rioter:

> would not be premised, as it was in *Raley* [and] *Cox*, . . . on a defendant's confusion about the state of the law and a government official's clarifying, if inaccurate, representations. It would instead rely on the premise that a defendant, though aware that his intended conduct was illegal, acted under the belief President Trump had waived the entire corpus of criminal law as it applied to the mob.

*Chrestman*, 525 F. Supp. 3d at 32.

### 2. Any reliance would not be objectively reasonable.

Even if Mr. Trump's statements could be construed as an unexpressed interpretation of the criminal laws applicable to St Cyr's conduct, and even if she relied on them, St Cyr cannot show that her reliance on those statements was reasonable.

After Mr. Trump's remarks, St Cyr entered restricted grounds, broke through a police line, entered the Capitol multiple times, and encouraged others to assault police.

St Cyr could not have reasonably relied on statements by Mr. Trump—or anyone—to conclude that that conduct was lawful. Thus, regardless of Mr. Trump's intent or the foreseeability of St Cyr's and other rioters' reactions to his statements, when St Cyr engaged in her conduct at the Capitol on January 6, 2021, any reasonable person in her shoes would "[know] he was breaking the law." *United States v. Corso*, 20 F.3d 521, 529 (2d Cir. 1994). St Cyr "cannot rely on the defense of entrapment by estoppel." *Id.* That would be true even if Mr.

11

Trump explicitly called for violence and mayhem: it is unreasonable, as a matter of law, for anyone to believe that Mr. Trump's speech rendered their ensuing misconduct lawful.

  **C.** **There is no available public-authority defense because Mr. Trump lacked actual authority to order St Cyr's criminal conduct, and any reliance was unreasonable.**

A defendant may "assert a defense of actual or believed exercise of public authority on behalf of a law enforcement agency or federal intelligence agency at the time of the alleged offense." Fed. R. Crim. P. 12.3(a)(1).[1] "The difference between the entrapment by estoppel defense and the public authority defense is not great." *Burrows*, 36 F.3d at 882; *United States v. Baker*, 438 F.3d 749, 753 (7th Cir. 2006) ("The elements that comprise the two defenses are quite similar."). Some courts have treated them as synonymous. *E.g.*, *Neville*, 82 F.3d at 761. Unsurprisingly, St Cyr's "public-authority" defense therefore fails for two reasons already discussed above with respect to entrapment-by-estoppel.

First, "[t]he validity of" the public-authority "defense depends upon whether the government agent in fact had authority to empower the defendant to perform the acts in question. If the agent had no such power, then the defendant may not rest on the 'public authority' [defense]." *Burrows*, 36 F.3d at 881-82 (quoting *Baptista-Rodriguez*, 17 F.3d at 1368 n.18. The circuits are unanimous on that point. *See United States v. Holmquist*, 36 F.3d 154, 161 nn. 6-7 (1st Cir. 1994) (characterizing as "nonexistent" and "not a defense at all" the "'defense' of apparent public authority" based "on a mistaken but good-faith belief that one's conduct is authorized by the government"); *United States v. Duggan*, 743 F.2d 59, 84 (2d Cir. 1984) (declining to adopt view that "a defendant may be exonerated on the basis of his reliance on an

---

[1] "Rule 12.3 sets forth a notice requirement but does not limit or expand the public authority defense," which was defined by federal common law prior to that Rule's adoption. *See, e.g.*, *United States v. Burrows*, 36 F.3d 875, 881 (9th Cir. 1994).

12

authority that is only apparent and not real"); *United States v. Pitt*, 193 F.3d 751, 758 (3d Cir. 1999), *abrogated on other grounds by Honeycutt v. United States*, 137 S. Ct. 1626 (2017); *United States v. Fulcher*, 250 F.3d 244, 254 (4th Cir. 2001) ("we adopt the unanimous view of our sister circuits that the defense of public authority requires reasonable reliance upon the actual authority of a government official"); *United States v. Sariles*, 645 F.3d 315, 318-19 (5th Cir. 2011) ("the public authority defense requires the defendant reasonably to rely on the actual, not apparent, authority"); *cf. United States v. Sampol*, 636 F.2d 621 (D.C. Cir. 1980) (noting in dicta that defendants' claim that CIA officer had conspired with them to murder an ambassador "would not have created a defense if appellants' participation in the crimes had been established," and so characterized evidence of the officer's employment with the CIA as likely "immaterial").[2] As discussed above, the president lacks the authority to empower citizens to steal or to obstruct congressional proceedings. *E.g.*, *North*, 910 F.2d at 891 n.24. The same goes for a president's personal attorney, or the other private citizens that St Cyr seeks to subpoena.

Second, "a defendant makes out a defense of public authority only when he has shown that his reliance on governmental authority was reasonable as well as sincere." *Burrows*, 36

---

[2] In *United States v. Barker*, 546 F.2d 940 (D.C. Cir. 1976) (per curiam), the court reversed the convictions of two defendants who participated in the burglary of Daniel Ellsberg's psychiatrist's office. The defendants claimed they did so at the behest of E. Howard Hunt, a long-time CIA agent who worked under the supervision of John Ehrlichman in the White House. *North*, 910 F.2d at 879. The case featured fractured separate opinions from the three-judge panel. Judge Wilkey, half of the two-judge majority, wrote that a defendant's reasonable reliance on the "apparent authority" of a government official (there, Hunt) to authorize his conduct could make out a defense. *Id.* (quoting *Barker*, 546 F.2d at 949 (opinion of Wilkey, J.). But that portion of *Barker* was not the controlling rationale and may not remain good law. The panel majority in *North* majority rejected Wilkey's standalone opinion and North's request for an instruction invoking his superiors' "apparent authorization of his action." *Id.* at 881. In any event, St Cyr can assert no plausible argument that, as in *Barker*, a government official supervising her work-related activities authorized her actions.

F.3d at 882; *Fulcher*, 250 F.3d at 254; *Sariles*, 645 F.3d at 318-19. This reasonableness requirement is necessary to ensure the "uniform enforcement of law"; otherwise, anyone could interpret a public official's actions or statements as authorizing them to engage in criminal conduct. *Id.* (quoting *United States v. Lansing*, 424 F.2d 225 (9th Cir. 1970)). It appears St Cyr will claim that because of Mr. Trump's tweets and statements at the "Stop the Steal" rally she suddenly believed she had been authorized as an agent of the Executive Branch to break police lines and enter the U.S. Capitol. If that was St Cyr's belief, it was, as a matter of law, unreasonable.

### III. CONCLUSION

For the foregoing reasons, the Court should preclude St Cyr from pursuing either an entrapment-by-estoppel or a public-authority defense.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:  */s/ Jacqueline Schesnol*
JACQUELINE SCHESNOL
Assistant United States Attorney, Detailee
AZ Bar No. 016742
601 D Street, N.W.
Washington, D.C. 20530
(602) 514-7500
jacqueline.schesnol@usdoj.gov

*/s/ Eric Boylan*
ERIC W. BOYLAN
Assistant United States Attorney
Texas Bar No. 24105519
601 D Street N.W.
Washington, DC  20002
(202) 815-8608
eric.boylan@usdoj.gov