**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Case No: 22-cr-185 (JDB)** |
| | : | |
| **YVONNE ST CYR,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION IN LIMINE**
**REGARDING TESTIMONY OF SGT. PAUL RILEY**

The defendant moves *in limine* to preclude certain testimony by MPD Sergeant Paul Riley. Her motion conflates two issues. First, she asks the Court to preclude impermissible expert opinion testimony from MPD Sergeant Paul Riley. The government will elicit no such testimony from him at trial. Second, she asks the Court to preclude Sergeant Riley from narrating body worn camera footage.[1] That request has no basis in the Federal Rules of Evidence. Accordingly, the motion should be denied in its entirety.

I.     **Sergeant Riley is a fact witness who was present at the U.S. Capitol building on January 6, in close proximity to the defendant, and will testify about the events of the day.**

According to the defendant, the government intends to elicit expert testimony from MPD Sergeant Paul Riley.  She is wrong—the government has no intention to elicit expert opinion testimony from Sergeant Riley or from any other witness.  Sergeant Riley is a fact witness who was present at the Capitol building on January 6.  On January 6, 2021, Sergeant Riley was activated as part of the high-visibility Civil Disturbance Unit for the Special Operations Division

---

[1] Judge McFadden recently denied a similar motion in limine from a defendant in another January 6 case. *See United States v. Mehaffie*, 21-cr-20-TNM, ECF 328 and 362.

at the "Stop the Steal" rally.  When an emergency call went out for all officers to respond to the Capitol, he, along with all available units, went to the Capitol.  While there, Sergeant Riley directed, supervised, assisted, and actively participated with other officers protecting the Capitol, both on the West Plaza, within the Lower West Terrace tunnel, and just inside double doors of the Capitol.

Sergeant Riley was on the Capitol's West Plaza from approximately 1:30 – 2:30 p.m. Sergeant Riley is circled in blue in the photos below.







Sergeant Riley supervised other officers in the West Plaza and participated, with them, in the defense of the Capitol building—including from approximately 2:12 to 2:28 p.m., when the defendant pushed against barricades and disobeyed police orders.  In fact, Sergeant Riley was in close proximity to the defendant throughout the afternoon of January 6, 2021, and he was subjected to the brutal conditions imposed on police officers by the mob that the defendant enabled, encouraged, and was a part of.  By way of example, see frames from MPD Officers Wilson and Yakub's body worn cameras ("BWC"), below.  Sergeant Riley is circled in blue, and the defendant is circled in yellow.







Sergeant Riley remained present on the West Plaza when the defendant and other rioters pushed through bike-rack fencing and broke through the police line (at approximately 2:28 p.m.), as seen in frames from MPD Officer Pitt and Hodge's BWC, below.





After the defendant and other rioters broke the police line, Sergeant Riley went to the "tunnel" of the Lower West Plaza. There, he led officers against the mob—which included the defendant—in defense of the tunnel.



Sergeant Riley was also within the double doors of the tunnel while the defendant was there for nearly 13 minutes (approximately 2:42 – 2:55 p.m.) before police removed her.





Finally, while the defendant stood on a ledge within the tunnel for approximately 24 minutes (approximately 2:56 – 3:19 p.m.), Sergeant Riley was one of the many police officers trying to get her, and the other members of the mob, out of the tunnel.



Sergeant Riley will testify about his firsthand knowledge of the events that he witnessed, took part in, and supervised on January 6, 2021, in parts of the Capitol where the defendant committed her crimes. The testimony he will offer is that of his personal experience based on being in the same areas of the Capitol at the same times as the defendant and is not expert opinion.

## II.    No Rule of Evidence Prevents Sergeant Riley from Narrating Body Worn Camera Footage

The defendant also asks the Court to preclude Sergeant Riley from narrating events depicted in other police officers' body worn camera footage—what the defendant calls "improper narrative testimony." Such an exclusion has no basis in the Federal Rules of Evidence.

Under the Federal Rules of Evidence, video narration is permissible unless the specific narration in question would run afoul of a specific rule. Courts routinely admit video narration where it is relevant and where there is a foundation for the witness to testify based on some specialized knowledge that may be helpful to a jury including, but not limited to, personal knowledge due to presence on the scene, familiarity with the appearance of a person for the purposes of identification, or repeated viewing of a video even where there has been no personal observation of the events in question. *See United States v. Shabazz*, 564 F.3d 280 (3rd Cir. 2009) (affirming trial court's admission of video narration by co-perpetrator where testimony was limited to portions of video where co-conspirator was percipient witness and identification testimony); *United States v. Begay,* 42 F.3d 486 (9th Cir.1994) (finding no error in the admissibly of officer's lay opinion testimony under Rule 701 narrating a video of a riot involving 200-300 people where officer had watched video over 100 times and testimony would be helpful to jury); *United States v. Torralba-Mendia*, 784 F.3d 652 (9th Cir. 2015) (affirming trial court's admission of video narration by officer offering lay testimony where the officer had viewed the video numerous times and provided details helpful to the jury).[2]

---

[2] Additional cases in which Courts throughout the United States have addressed the issue of video narration include: *United States v. West*, 877 F.3d 434 (1st Cir. 2017) (affirming convictions related to bank robbery where trial court permitted officer witness to narrate redacted video of defendant's alleged flight from robbery scene); *United States v. Garcia-*

These rules have been interpreted broadly where narration would be helpful to a jury, and at least one circuit has specifically held that "an officer who has extensively reviewed a video may offer a narration, pointing out particulars that a casual observer might not see." *United States v. Begay*, 42 F.3d 486, 502-03 (9th Cir.1994). In *Begay*, the Ninth Circuit admitted the testimony of an officer as he narrated video that he had viewed numerous times on the basis that his testimony would be helpful to the jury as lay opinion testimony under Rule 701. *Begay*, 42 F.3d at 502. In *Begay*, appellants were among 32 individuals charged with multiple counts – including conspiracy, robbery, assault, burglary, and kidnapping – related to a riot involving 200-300 individuals who violently sought to take over the Navajo Nation Administration and Finance Building in Window Rock, Arizona on July 20, 1989. *Id.* at 489, 502.

At trial, Officer Stewart Calnimptewa narrated events depicted in a video, even though he did not have first-hand knowledge of the events in question. *Id.* at 502. Calnimptewa testified

---

*Zarante*, 419 F. Supp. 3d 1176 (N.D. Cal. 2020) ("Witnesses may narrate and describe events in a video based on their perceptions. They may not speculate as to the intention of other actors captured in the video, nor may they describe the shooting as a murder."); *Allen v. Klee*, Case No. 14-cv-13409, 2016 WL 5791189 (E.D. Michigan, Northern Division, Oct. 4, 2016) (denying ineffective assistance habeas claims where non-expert officer narrated video and his opinions were helpful to the jury where he "had the benefit of reviewing the video numerous times, giving him the opportunity to comprehend the events that were transpiring on the video and to determine the identity of the participants."); *Humphries v. Brewer*, 2019 WL 3943074 (E.D. Michigan, Southern Div., August 21, 2019) (denying ineffective assistance habeas claims where law enforcement and civilian witnesses narrated apartment surveillance video, had personal knowledge of the physical location in which the video was taken, and the testimony was helpful to the jury); *Hunt v. Davis*, Civ. No. SA-17-CA-0986-XR, 2018 WL 2306900 (W.D. Texas, May 21, 2018) (unpublished opinion) (denying ineffective assistance habeas claim where counsel had "no valid reason" to object to officer's narration of store surveillance video where officers was present during recording and personally witnessed recorded events); *James v. People of the Virgin Islands*, 60 V.I. 311, 2013 WL 6585638 (S. Ct. of Virgin Islands, Dec. 12, 2013) (finding no abuse of discretion where surveillance video was admitted and detective with firsthand knowledge of the events narrated video for the jury, although "better practice" for purposes of authenticating the video would have been to have a different detective testify video's accuracy).

that he had viewed the original videotape ("Exhibit 1) "over 100 times" with the aid of a
magnifying glass. *Id*. He then "had portions of the videotape copied in slow motion and their
quality enhanced to help his identification of the demonstrators and their actions during the
incident." *Id*. This altered version of the video was admitted at trial over a defense objection. *Id*.
Calnimptewa then narrated the video, including explaining the alterations that he had made to
the original.

On appeal, the defendant challenged the video narration because Calnimptewa was not
qualified as an expert and the testimony was improper under Rule 602 because "Calnimptewa
lacked personal knowledge of the events depicted in the videotape." *Id*. at 502. The court
rejected the arguments, holding that Calnimptewa's testimony was properly admitted as opinion
testimony by a lay witness under Rule 701, where the testimony was "rationally based on
[Calnimptewa's] own perceptions and that the testimony would be helpful to the jury." *Id*. at
502. With respect to the witness's perception of the events, the court specifically explained that,
under Rule 701,

> Calnimptewa's perceptions need not be based on the "live" events of July 20th
> because he was not testifying to his eyewitness account of those events.
> Calnimptewa's testimony concerned only the scenes depicted in Exhibit 105 [the
> video] as extracted from Exhibit 1, the original videotape. Thus, Calnimptewa
> need only have perceived the events depicted in Exhibit 1.

*Id.* at 502. In evaluating whether his testimony would be helpful to the jury, the court
emphasized that Calnimptew's repeated viewing of a video that captured over 200 people
simultaneously would be helpful to a jury, even where the jury had the original unaltered video
tape as evidence. The court reasoned that

> Calnimptewa's testimony about Exhibit 105 was likely to have been helpful to
> the jury in evaluating Exhibit 1. Although the jury viewed Exhibit 1 in its
> entirety, it is reasonable to assume that one viewing a videotape of a
> demonstration involving over 200 people would likely not see certain details,

> given the tremendous array of events all occurring simultaneously. Officer Calnimptewa spent over 100 hours viewing Exhibit 1. To have the jury do likewise would be an extremely inefficient use of the jury's and the court's time. Therefore, Calnimptewa's testimony concerning which persons were engaged in what conduct at any given moment could help the jury discern correctly and efficiently the events depicted in the videotape.

*Id.* at 503. The *Begay* court looked to the relevant evidentiary rules in determining whether the video narration was admissible in the specific context of the trial.

The defendant's overly broad motion seeking to exclude Sergeant Riley's video narration at trial ignores the admissibility of broad categories of relevant testimony, without undertaking the more nuanced analysis required with respect to each witness and that person's relationship to the video in question. Thus, the Court should deny the defendant's motion and, instead, adopt the same rule-based approach used in *Begay* and determine the admissibility of video narration on a particularized basis. That analysis would permit video narration where such testimony would be relevant, helpful to the jury, and otherwise admissible. Furthermore, any specific challenges are properly resolved not in a *limine* motion, but during trial itself.

## <u>CONCLUSION</u>

Sergeant Riley will testify about his firsthand knowledge of the events that he witnessed, took part in, and supervised on January 6, 2021, in relevant parts of the Capitol.  He should be allowed to do so, including by explaining and narrating events depicted in BWC footage where such testimony would be relevant and helpful to the jury.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:       */s/ Jacqueline Schesnol*
JACQUELINE SCHESNOL
Assistant United States Attorney, Detailee
AZ Bar No. 016742
601 D Street, N.W.
Washington, D.C. 20530
(602) 514-7500
jacqueline.schesnol@usdoj.gov

*/s/ Eric Boylan*
ERIC W. BOYLAN
Assistant United States Attorney
Texas Bar No. 24105519
601 D Street N.W.
Washington, DC  20002
(202) 815-8608
eric.boylan@usdoj.gov