UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br><br>YVONNE ST CYR,<br>    Defendant. | Criminal Action No. 22-185 (JDB) |

**MEMORANDUM OPINION**

    Sometimes a judge is called upon to do what the law requires, even if it may seem at odds with what justice or one's initial instincts might warrant.  This is one such occasion.

    On January 6, 2021, Yvonne St Cyr livestreamed on social media and yelled encouragement to the mob around her as she pushed through police barricades and past police officers to force her way into the United States Capitol.  In March 2023, a jury convicted her on six counts, and this Court then sentenced her to 30 months' imprisonment and three years' supervised release.  The Court also required St Cyr to pay a $1,000 fine, $2,000 in restitution to the Architect of the Capitol ("AOC"), and a $270 special assessment.  St Cyr appealed her conviction but made the latter two payments, although not the fine.

    While St Cyr's appeal was pending, President Trump was inaugurated into his second term as President and immediately issued an executive order commuting some January 6 related sentences and granting "a full, complete and unconditional pardon to all other individuals convicted of offenses related to the" January 6 Capitol riot, including St Cyr.  Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 20, 2025).  Then, at the United States' request, the D.C. Circuit vacated St Cyr's conviction and remanded with instructions to dismiss the case as moot, which this Court did.

1

Now St Cyr has moved to be refunded the special assessment and restitution she paid. The question presented is thus whether a convicted defendant who receives a Presidential pardon while her conviction is on appeal—and thus has her conviction vacated and her criminal case dismissed as moot—is entitled to recover money she paid as part of her sentence upon conviction. With some reluctance, the Court concludes that she is. Vacatur of a conviction on appeal—even if resulting from a pardon—restores to a defendant the presumption of innocence, for finality was "never reached on the legal question of . . . guilt." United States v. Schaffer, 240 F.3d 35, 38 (D.C. Cir. 2001) (en banc) (emphasis in original). And at the core of our legal system is the principle that the government cannot punish a person, whether by depriving her of liberty or money, if she has been "adjudged guilty of no crime." See Nelson v. Colorado, 581 U.S. 128, 136 (2017). Moreover, the government is authorized to refund the restitution and special assessment out of the United States Treasury based on a judgment from this Court. The Court therefore will grant St Cyr's motion and enter judgment in her favor on that issue.

## Background

On the afternoon of January 6, 2021, Congress assembled a joint session to certify the Electoral College's election of Joseph Biden as the forty-sixth President of the United States. That same day, President Donald Trump—Biden's opponent in the 2020 election—held a rally on the National Mall to champion his view that the election was illegitimate, which St Cyr and other supporters attended. See Trump v. Thompson, 20 F.4th 10, 17–18 (D.C. Cir. 2021). As the time of Congress's joint session approached, many of the rallygoers, including St Cyr, made their way to the Capitol and ultimately forced their way inside.

About two months later, law enforcement arrested St Cyr for her actions. A grand jury then returned an indictment charging her with six counts: two felonies for violations of 18 U.S.C.

§ 231(a)(3) and four misdemeanors for violations of 18 U.S.C. § 1752(a)(1), (a)(2) and 40 U.S.C. § 5104(e)(2)(D), (e)(2)(G).  See Indictment [ECF No. 37].  On March 10, 2023, a jury convicted her on all counts.  See Verdict Form [ECF No. 90].

Finding her conduct very serious and remorse absent, the Court then sentenced St Cyr to 30 months' imprisonment and three years' supervised release.  Judgment [ECF No. 119] at 3–4. It also ordered St Cyr to pay a $270 special assessment, $2,000 in restitution, and a $1,000 fine. Id. at 7–8.  St Cyr paid the first two penalties but not the third.  See Mot. Return Monetary Penalties [ECF No. 134] ("Mot.") at 3 & n.1.  As required by statute, the $270 special assessment has since been deposited into the Crime Victims Fund, "a special account in the United States Treasury." See United States v. Sun Growers of Cal., 212 F.3d 603, 605 (D.C. Cir. 2000); 34 U.S.C. § 20101(b)(2).  The AOC, a legislative agency tasked with maintaining the Capitol and its grounds,[1] has deposited the $2,000 in restitution into one of its Treasury accounts.[2]

Judgment in hand, St Cyr appealed her conviction to the D.C. Circuit.[3]  But while that appeal was pending, Trump was inaugurated for his second term as President, and he immediately issued a blanket pardon for all those convicted of offenses related to the events of January 6.  See 90 Fed. Reg. 8331.  In conjunction, the President directed the Attorney General to pursue dismissal of all relevant pending indictments.  Id.  Pursuant to those directives, the United States asked the D.C. Circuit to vacate St Cyr's conviction and remand to this Court to dismiss the case as moot.

---

[1] See 2 U.S.C. § 1811; Organizational Structure, Architect of the Capitol, https://www.aoc.gov/about-us/organizational-structure.

[2] Administrative Services for this District has confirmed this status regarding St Cyr's payments.

[3] At trial and on appeal, St Cyr never contested the fact that she entered the Capitol on January 6.  She urged the D.C. Circuit to reverse her conviction because she contended that this Court wrongfully denied admission of certain evidence, that 18 U.S.C. § 231(a)(3) is unconstitutionally vague, and that the government presented insufficient evidence to convict her under that statute and under 18 U.S.C. § 1752(a)(1) and § 1752(a)(2).  See generally Opening Br. of Appellant, United States v. St Cyr, No. 23-3174, 2025 WL 342045 (D.C. Cir. Jan. 27, 2025).

See Appellee's Unopposed Mot. Vacate Convictions & Remand for Dismissal, United States of America v. St Cyr, No. 23-3174.  The D.C. Circuit granted the motion and vacated the conviction, see D.C. Cir. Order [ECF No. 132-1] at 1 (citing Schaffer, 240 F.3d at 37–38), and this Court then dismissed the case, see Order [ECF No. 133].

About four months later, St Cyr filed the instant motion seeking the return of the special assessment and restitution she paid.  She is far from the only January 6 defendant to make such a motion.[4]  The government supports St Cyr's request for a refund, see Gov't's Resp. Def.'s Mot. Return Monetary Penalties [ECF No. 136] ("Gov't Br."), as it has the motions of similarly situated January 6 defendants, which have been denied, see, e.g., United States v. Sullivan, Crim. A. No. 21-78 (RCL), 2025 WL 1444392, at *2 (D.D.C. May 20, 2025); United States v. Vargas, Crim. A. No. 21-47 (RDM), 2025 WL 1786681, at *2 (D.D.C. June 27, 2025).

**Discussion**[5]

St Cyr's argument relies on the fact that her conviction has been vacated, not only that she has been pardoned.  She acknowledges that, had she not appealed her conviction or had the D.C. Circuit affirmed it before President Trump's pardon, she would have no right to be refunded the money she paid.  Mot. at 5; see Knote v. United States, 95 U.S. 149, 153–54 (1877).  But because her conviction was vacated, she posits, the "monetary penalties must be refunded," Mot. at 5, and

---

[4] Other defendants whose convictions were vacated because of President Trump's pardon have moved for the return of the monetary penalties they paid pursuant to their now-vacated convictions, and each motion has been denied. See, e.g., United States v. Sullivan, Crim. A. No. 21-78 (RCL), 2025 WL 1444392 (D.D.C. May 20, 2025); United States v. Vargas, Crim. A. No. 21-47 (RDM), 2025 WL 1786681 (D.D.C. June 27, 2025); Mem. Op. & Order, United States v. Santos, Crim. A. No. 21-47 (RDM), ECF No. 111 (June 27, 2025); Order, United States v. Ballenger, Crim. A. No. 21-719 (JEB), ECF No. 176 (D.D.C. June 30, 2025); Op. & Order, United States v. Hager, Crim. A. No. 21-381 (TSC), 2025 WL 1886135 (D.D.C. July 3, 2025); United States v. Sutton, Crim. A. No. 21-598 (PLF), 2025 WL 2149396 (D.D.C. July 15, 2025).

[5] The Court has ancillary jurisdiction over St Cyr's motion, see United States v. Wilson, 540 F.2d 1100, 1103 (D.C. Cir. 1976), and the motion presents a justiciable controversy despite the government's lack of objection, see Vargas, 2025 WL 1786681 *2 at n.3 (quoting United States v. Windsor, 570 U.S. 744, 758 (2013)).

can be without running afoul of the Appropriations Clause, see Suppl. Br. Mot. Return Monetary Penalties [ECF No. 137] ("Suppl. Br.") at 4; 31 U.S.C. § 1304(a).

The Court agrees. Vacatur is different from a pardon: it works the legal fiction that the vacated order—here, the conviction—never occurred in the first place. As the Supreme Court explained in Nelson, that fiction works to restore to a defendant her right to—and rid the government of its right to retain—money paid to the government on the basis of the conviction. And because the government no longer has a right to retain the $2,270 St Cyr paid, the Little Tucker Act gives this Court the power to order that it be returned to her, and 31 U.S.C. § 1304(a) allows the government to comply consistent with the Appropriations Clause.

I. **A defendant whose conviction is vacated on appeal has a right to recover money she paid the government pursuant to the conviction.**

When a court order (here, the judgment of conviction) is vacated, it is deemed "void ab initio." Hewitt v. United States, 145 S. Ct. 2165, 2173 (2025). Vacatur has both prospective and retrospective effects. The prospective effect is intuitive: the order has no forward-looking operation because it no longer exists. Id. In contrast, the retrospective effect is the function of a legal fiction: "the law acts as though the vacated order never occurred." Id. at 2174. Put another way, vacatur "wipe[s] the slate clean." Id. (alteration in original) (quoting Pepper v. United States, 562 U.S. 476, 507 (2011)). So a defendant whose sentence was vacated has not, as a matter of law, been sentenced—even though, as a matter of fact, she has been. See id.

Accordingly, when a conviction is vacated, the defendant "is to be treated going forward as though he were never convicted." Id. "[T]he presumption of" such a defendant's "innocence [i]s restored." Nelson, 581 U.S. at 135. This, of course, means that a defendant must be set free if she is incarcerated, cf., e.g., North Carolina v. Pearce, 395 U.S. 711, 721 (1969), and that she does not have to pay any yet-unpaid monetary aspects of the sentence, cf. United States v. Barrow,

5

109 F.4th 521, 531 (D.C. Cir. 2024); United States v. Pogue, 19 F.3d 663, 665–66 (D.C. Cir. 1994). But what of funds in the form of restitution or a special assessment that a defendant has already paid the government?

In Nelson, the Supreme Court made clear that vacatur entitles a defendant to have those funds returned to her.[6]  Start with the retrospective effect of vacatur.  In the eyes of the law, no conviction ever existed that permitted the government to exact the funds in the first place.  See Nelson, 581 U.S. at 135–36.  Thus, even though the funds are now in the government's hands, they remain the defendant's money.  See id. at 137–38 (explaining that refunding the fees defendants paid is not "compensation" but the return of "their money"); Michael L. Wells, Wrongful Convictions, Constitutional Remedies, and *Nelson v. Colorado*, 86 Fordham L. Rev. 2199, 2207 (2018) (hereinafter Wrongful Convictions) ("In short, when Colorado took the money pursuant to Nelson's conviction, the state obtained only a defeasible interest in it.  Once the conviction had been overturned, Colorado's basis for taking the money had disappeared, leaving Nelson as the only other stakeholder.").

From there, the prospective effect of vacatur kicks in.  Once a defendant's convictions are "erased," the government can no more hold on to his money than it can hold on to his liberty. Nelson, 581 U.S. at 135–38; cf. United States v. U.S. Coin & Currency, 401 U.S. 715, 720–21 (1971) (citing the "serious constitutional questions" that would arise under the Due Process and Takings Clauses of the Fifth Amendment if the government could retain property taken from someone whose conviction was invalidated).  A person "adjudged guilty of no crime" cannot be presumed "nonetheless guilty enough for monetary exactions." Nelson, 581 U.S. at 136.

---

[6] While Nelson discussed the effects of invalidation—i.e., either reversal or vacatur, see 581 U.S. at 135—this Court uses vacatur as a shorthand, because that is what is relevant here.

Here, vacating St Cyr's conviction "erased" it and "restored" her "presumption of . . . innocence" and, along with it, her right to the money she had paid because of the now-vacated conviction. Id. at 135–37. The government thus cannot hold onto it. Id. at 136.[7]

In resolving motions similar to St Cyr's, other judges in this district have put forward two reasons that Nelson may not give a defendant whose conviction was vacated on appeal because of a pardon a right to a refund. First, vacatur because of a pardon is different from vacatur for other reasons. See Vargas, 2025 WL 1786681, at *3. Second, Nelson was simply a procedural due process case and is thus inapplicable here. See Sullivan, 2025 WL 1444392, at *4. This Court finds neither reason persuasive.

Other judges in this District have held that vacatur stemming from a pardon does not entitle defendants to the return of fees paid because a pardon after a conviction does not entitle a defendant to a return of fees paid. See Vargas, 2025 WL 1786681, at *3; Knote, 95 U.S. at 153–54. Yet that conclusion incorrectly assumes that it is the pardon that is doing the work here. The reason a pardon alone does not entitle one to a refund is because a pardon works only prospectively: a pardon "release[s]" an offender "from the consequences of his offense," Knote, 95 U.S. at 153, but does not "'blot out guilt'" or "restore the offender to a state of innocence in the eye of the law," In re North, 62 F.3d 1434, 1437 (D.C. Cir. 1994) (quoting Bjerkan v. United States, 529 F.2d 125, 128 n.2 (7th Cir.1975)) (explaining that contrary language in Ex parte Garland, 71 U.S. (4 Wall.) 333 (1866), was dicta). However, when one is pardoned while the conviction is on appeal, the appeal becomes moot, and her conviction must be vacated. See Schaffer, 240 F.3d at 38. As

---

[7] In Nelson, Colorado suggested that "'[e]quitable considerations' . . . may bear on whether a State may withhold funds from criminal defendants after their convictions are overturned," but because Colorado identified no relevant considerations, the Supreme Court did not opine on the matter. See 581 U.S. at 139. So there may be a case in which Nelson does not require refunding in full a defendant whose conviction was invalidated. Here, however, the government did not simply fail to cite equitable considerations warranting withholding St Cyr's funds, but it has agreed St Cyr should be refunded. So this Court, like the Supreme Court in Nelson, cannot say equitable considerations support withholding the funds from St Cyr.

7

explained, vacatur does "wipe[] the slate clean," Hewitt, 145 S. Ct. at 2174 (quoting Pepper, 562 U.S. at 507), and restores to the defendant both the presumption of innocence and the right to money paid based on the now-vacated conviction, Nelson, 581 U.S. at 135–37.

Moreover, vacatur's effects do not turn on the reason behind the vacatur. See, e.g., Hewitt, 145 S. Ct. at 2173–74 (discussing the "[b]ackground principles" of vacatur without regard to rationale); United States v. Ayres, 76 U.S. 608, 610 (1869) (vacatur leaves the parties "in the same situation as if no trial had ever taken place" even where the conviction was vacated because the trial court granted the government's motion for a new trial). In Nelson, the Supreme Court never mentioned why the petitioner's conviction was vacated, see United States v. Ajrawat, 738 F. App'x 136, 139 (4th Cir. 2018), and in fact rejected Colorado's argument that certain kinds of invalidation do not restore the presumption of innocence, see Nelson, 581 U.S. at 136 n.10 ("[R]eversal is reversal, regardless of the reason." (internal quotation marks omitted)).

Indeed, in the very case it cited when it vacated St Cyr's conviction, the D.C. Circuit had explained that a defendant whose conviction is vacated on appeal because of a pardon is no longer guilty in the eyes of the law. See D.C. Cir. Order (citing Schaffer, 240 F.3d at 38). While a pardon alone does not "render [the defendant] innocent," if the pardon then leads to vacatur of the defendant's conviction, the defendant is no longer adjudged guilty. Schaffer, 240 F.3d at 38. "[F]inality [i]s never reached on the legal question of" guilt; "the efficacy of the jury verdict against" the defendant and the defendant's "innocence" remain "unanswered question[s]." Id. (emphasis in original). This result is based on the principle of finality. In our legal system, "[t]he interests of justice ordinarily require that a defendant not stand convicted without resolution of the merits of an appeal." Pogue, 19 F.3d at 665 (citation modified). So, whether a conviction is vacated because of trial error, pardon, or even the defendant's death, the law "cannot assume . . .

8

[the defendant] is guilty of the [crime] charged." Fiswick v. United States, 329 U.S. 211, 223 (1946); Schaffer, 240 F.3d at 38; cf. Pogue, 19 F.3d at 665 (explaining that an appellate court must vacate the conviction of a defendant who dies while an appeal is pending, regardless of whether the appeal would have been successful). Put simply, that it was a pardon that caused the D.C. Circuit to vacate St Cyr's conviction is simply a red herring.

Furthermore, Nelson's reasoning is not limited to procedural due process. While the Supreme Court ultimately held that a Colorado law's barriers to issuing refunds violated procedural due process, that holding relied on a broader preliminary conclusion: that the petitioners had an interest in the money they had paid to the state. See Nelson, 581 U.S. at 135–39; Mathews v. Eldridge, 424 U.S. 319, 331 (1976) (for procedural due process rights to attach, there must exist a substantive interest in "liberty" or "property"). Nelson did not simply assume that such an interest existed. Rather, it drew on principles of (as relevant here) vacatur to determine that the money the petitioners paid Colorado remained "their money," with the state having no right "to retain" it. Nelson, 581 U.S. at 135–38. Those conclusions stemmed not from Colorado law but from general principles of vacatur that apply to state and federal convictions alike. See id. at 135–36 (citing Johnson v. Mississippi, 486 U.S. 578, 585 (1988); Coffin v. United States, 156 U.S. 432, 453 (1895); Burks v. United States, 437 U.S. 1, 11 (1978)). The recognition that vacatur restores property rights is why Nelson concluded that "a State may not impose anything more than minimal procedures on the refund of exactions dependent upon a conviction subsequently invalidated." Nelson, 581 U.S. at 139. It is also why every court of appeals to have addressed the issue post-Nelson has held that, when a federal conviction is vacated on appeal due to the defendant's death,

9

the defendant's estate has a right to the money the defendant paid to the government pursuant to his conviction.[8]

The takeaway is that a defendant whose conviction is vacated has a right to be refunded the money she paid the government under her sentence, regardless of the reason for the vacatur, and regardless of whether she is in state or federal court. Accordingly, the Court concludes that St Cyr has a right to be refunded the $2,270 she paid the government as a result of her now-vacated conviction.[9]

### II. This Court has authority to order the government to return St Cyr's money consistent with the Appropriations Clause.

---

[8] United States v. Libous, 858 F.3d 64, 67 (2d Cir. 2017); Ajrawat, 738 Fed. App'x at 138–39; cf. United States v. Brooks, 872 F.3d 78, 89 (2d Cir. 2017) (holding that Nelson requires abating fees, special assessment, and restitution orders without explicitly mentioning whether defendant has a right to the money already paid); United States v. Coddington, 802 F. App'x 373, 373 (10th Cir. 2020) (similar); United States v. Reynolds, 98 F.4th 62, 72 (1st Cir. 2024) (similar); accord Wright & Miller, Fed. Prac. & Proc. Crim. § 545 (5th ed. 2025) (citing Nelson for the proposition that, "[i]f the defendant's conviction was vacated . . . and no retrial will occur, the government must refund fees . . . taken from the defendant as a consequence of the conviction").

[9] In doing so, the Court notes that it need not opine on whether, under Nelson, non-governmental victims who receive restitution pursuant to a judgment must turn over the money when the judgment is vacated. See Gov't Br. at 4 n.2 ("The government does not believe that Nelson would require that result had the restitution payment been disbursed to and vested in a third-party victim."). Under Nelson's logic, it is evident that a defendant has some interest in the restitution he paid, as invalidation voids the legal basis for an order of restitution as much as it does the legal basis for an order to pay a fine and special assessment. See, e.g., Brooks, 872 F.3d at 89. Indeed, Nelson said Colorado could not impose significant barriers to the petitioners' refund of the fees and restitution they paid. Nelson, 581 U.S. at 131. Simultaneously, however, Nelson stated only that the petitioners had "an obvious right in regaining the money they paid Colorado," id. at 135 (emphasis added), and discussed only how the invalidation of a conviction rids a government of any right to the money the defendant paid, id. at 135–36; see id. at 138 ("Petitioners seek only their money back, not interest on those funds for the period the funds were in the State's custody." (emphasis added)). Put simply, Nelson explicitly said only that a defendant whose conviction is invalidated has a right to be refunded by the government. See Wells, Wrongful Convictions at 2207. Whether a victim has an interest in the money received as restitution, whether any such interest may be superior to the defendant's, and whether equitable considerations may weigh in favor of permitting the victim to retain the funds all remain unclear. See Reynolds, 98 F.4th at 72 (holding that a restitution order must abate upon a defendant's death pending appeal but "tak[ing] no position on whether the different considerations that may arise where forfeited property had been distributed to victims before a defendant's death would call for a different result"); Brooks, 872 F.3d at 90 (determining that, under Nelson, a defendant whose conviction was vacated on appeal was entitled to receive money paid in restitution that the court had yet to disburse to the victims); cf. Bank of U.S. v. Bank of Wash., 31 U.S. 8, 15–17 (1832) (explaining that, when a civil judgment is vacated, the party who handed over property pursuant to the judgment has a right to be reimbursed by the opposing party, but that third parties who have been lawfully transferred that property maintain their right to it). Here, however, St Cyr paid restitution to a government entity, so the Court need rely only on Nelson's determination that a defendant has a right to be refunded by the government.

10

Despite the conclusion that St Cyr has a right to the money she paid the government, more analysis is needed before this Court can require that the government repay her. That is because the special assessment and restitution St Cyr paid have since been deposited, respectively, in the Crime Victims Fund and an account of the AOC—both of which lie in the United States Treasury. The Appropriations Clause mandates that "[m]oneys once in the treasury can only be withdrawn by an appropriation of law." Knote, 95 U.S. at 154–55; Haskins Bros. & Co. v. Morgenthau, 85 F.2d 677, 681 (D.C. Cir. 1936) (explaining that funds deposited into the Treasury are public money within the meaning of the Appropriations Clause even if the funds were unconstitutionally taken or remained the property of an individual); accord Republic Nat'l Bank of Miami v. United States, 506 U.S 80, 94 (1992). The government's agreement that it can refund St Cyr from the Treasury does not decide the issue; no matter the desire of the Executive Branch, "it cannot touch moneys in the [T]reasury, except [when] expressly authorized by act of Congress." Knote, 95 U.S. at 154.

Hence, the question is whether there exists an appropriation that permits the government to withdraw money to repay St Cyr. According to St Cyr, the answer is yes because Congress has appropriated funds to pay final judgments against the United States. Suppl. Br. at 4; see 31 U.S.C. § 1304(a).

The Court agrees. Under 31 U.S.C. § 1304(a), "[n]ecessary amounts are appropriated to pay final judgments" rendered by district courts against the United States.[10] And under the Little

---

[10] In relevant part, 31 U.S.C. § 1304(a) provides

(a) Necessary amounts are appropriated to pay final judgments, awards, compromise settlements, and interest and costs specified in the judgments or otherwise authorized by law when—
    (1) payment is not otherwise provided for;
    (2) payment is certified by the Secretary of the Treasury; and
    (3) the judgment, award, or settlement is payable—
        (A) under section 2414 . . . of title 28 . . . .

28 U.S.C. § 2414 authorizes payment of "final judgments rendered by a district court . . . against the United States."

11

Tucker Act, this Court has the authority to award St Cyr a judgment against the United States for the return of the $2,270 paid on the now-vacated conviction.

The Little Tucker Act gives district courts jurisdiction over certain claims against the United States that do not exceed $10,000. 28 U.S.C. § 1346(a)(2). To fall within this jurisdictional grant, an individual must generally point to a statute, contract, or Constitutional provision that "specifically authorize[s] awards of money damages"—i.e., a money-mandating substantive right. Kizas v. Webster, 707 F.2d 524, 538 n.74 (D.C. Cir. 1983); Van Drasek v. Lehman, 762 F.2d 1065, 1070 (D.C. Cir. 1985). But there is an exception "for suits seeking the return of property 'improperly exacted or retained.'" Kizas, 707 F.2d at 538 n.74 (citing Army & Air Force Exch. Serv. v. Sheehan, 456 U.S. 728, 739 n.11 (1982)); United States v. Testan, 424 U.S. 392, 400 (1976); Clark v. Libr. of Cong., 750 F.2d 89, 104 n.31 (D.C. Cir. 1984). This exception recognizes that "the Tucker Act protects private property from illegal government levy, regardless of whether any other statute or regulation authorizes recovery." Kizas, 707 F.2d at 538 n.74.

The improperly exacted or retained exception also applies to 31 U.S.C. § 1304(a). While, like jurisdiction under the Little Tucker Act, payment pursuant to § 1304(a) typically requires that a judgment be "based on a substantive right to compensation based on the express terms of a specific statute," Office of Personnel Mgmt. v. Richmond, 496 U.S. 414, 432 (1990), § 1304(a) also applies where "the plaintiff is . . . suing for money improperly retained or exacted," id. (quoting Testan, 424 U.S. at 401–02).[11]

---

[11] Republic National Bank of Miami did not call the improperly exacted or retained exception into question. There, the Supreme Court addressed whether the appeal of a civil forfeiture judgment was moot because the government had deposited the proceeds from the sale of the seized property into the Treasury. Republic Nat'l Bank of Miami, 506 U.S. at 94–95. The Court determined it was not moot because § 1304(a) authorized the money to be withdrawn from the Treasury. Id. In so doing, the Court emphasized that § 1304(a) could not alone authorize the withdrawal because Richmond required a substantive right to compensation. Id. The Court found a substantive right in 28 U.S.C. § 2465, which provides that "[u]pon entry of judgment for the claimant in any [forfeiture] proceeding . . . such property shall be returned . . . to the claimant." Republic Nat'l Bank of Miami, 506 U.S. at 94–95. That

As the Court has concluded, the vacatur of St Cyr's conviction restored her right to the $2,270 she paid and eliminated any right of the government to retain it. See Nelson, 581 U.S. at 135–38 (once a conviction is invalidated, a government has no "right . . . [to] retain the amount paid out by the defendant"). St Cyr is thus entitled under the Little Tucker Act to the return of funds improperly retained. This conclusion breaks no new ground; courts have consistently held that the Little Tucker Act permits district courts to order the government to refund a defendant whose conviction has been invalidated. See, e.g., Pasha v. United States, 484 F.2d 630, 631 (7th Cir. 1973); DeCecco v. United States, 485 F.2d 372, 373 (1st Cir. 1973); United States v. Lewis, 478 F.2d 835, 836 (5th Cir. 1973); Neely v. United States, 546 F.2d 1059, 1064 (3d Cir. 1976); United States v. Hansen, 906 F. Supp. 688, 697 (D.D.C. 1995).[12] It matters not that St Cyr seeks compensation in these proceedings rather than in a separate civil action. Under D.C. Circuit

---

statute was needed because the Supreme Court could not rely on the Little Tucker Act's protection of private property improperly collected or retained. For one, the claim at issue was over the Little Tucker Act's $10,000 limit. See id. at 83. For two, and more importantly, under forfeiture statutes, the United States lawfully collects and retains property even where the property belonged to an innocent owner. U.S. Coin & Currency, 401 U.S. at 719–20 ("centuries of history support" the conclusion that a forfeiture statute "operates to deprive totally innocent people of their property"); see 21 U.S.C. § 881 (permitting the government to seize certain property regardless of the owner's guilt). As a result, a money-mandating statute was necessary in Republic National Bank of Miami both to waive the United States' sovereign immunity and to permit payment from the Treasury under 31 U.S.C. § 1304(a). See Richmond, 496 U.S. at 432. Here, by contrast, the government's legal authority to exact and retain the special assessment and restitution stemmed solely from St Cyr's conviction. Once the conviction was vacated, it automatically became improper for the government to retain those funds, see Nelson, 581 U.S. at 135–38, making St Cyr's claim for a $2,270 refund actionable under the Little Tucker Act and payable under § 1304(a), see Richmond, 496 U.S. at 432.

[12] Other Circuits to have addressed the question whether a court has the power to order the government to refund a defendant whose conviction has been vacated have answered in the affirmative, although some Circuits have not rested their holdings on the Little Tucker Act. See, e.g., United States v. Hayes, 385 F.3d 1226, 1229 (9th Cir. 2004) (holding a court has the power and duty under Federal Rule of Criminal Procedure 41(g) alone to refund a defendant whose conviction has been vacated); United States v. Mandel, 862 F.2d 1067, 1075 (4th Cir. 1988) (affirming district court's vacatur of defendant's conviction on writ of error coram nobis and ordering government to refund fines paid); United States v. Jones, 403 F.3d 604, 607 (8th Cir. 2005) (vacating conviction and ordering defendant refunded without specifying source of authority); cf. Sun Growers of Cal., 212 F.3d at 605 (holding that a defendant whose conviction is vacated is not entitled to interest on the funds he paid, but implying that a district court has the authority to order that the government refund him). None of those Circuits discussed the Appropriations Clause, however, and this Court is not aware of any appropriation that would permit payment other than 31 U.S.C. § 1304(a). Because that statute only permits payment upon a judgment rendered by a district court, this Court concludes the Little Tucker Act is the proper source of the Court's authority to order the government to refund St Cyr.

precedent, a district court presiding over criminal proceedings has the authority to issue a judgment for the return of property that it would also be able to issue if sitting as a civil court. United States v. Wilson, 540 F.2d 1100, 1103–04 (D.C. Cir. 1976).[13] [14]

Accordingly, this Court has the authority to render a $2,270 judgment against the United States in St Cyr's favor, and the government is authorized to pay that amount out of the Treasury under 31 U.S.C. § 1304(a).[15] A contrary conclusion would mean that no defendant whose conviction is invalidated on appeal—whether because of a pardon, death, trial error, a holding that

---

[13] Although Wilson did not rely on the Little Tucker Act, it made clear that, although a defendant may have "adequate civil remedies" to obtain her property that the government improperly holds, she does not need to "bring a civil action" but instead can seek relief in the criminal proceedings. 540 F.2d at 1104. That reasoning applies squarely to this Court's ability to enter a judgment here: St Cyr could bring a civil suit under the Little Tucker Act, but is also able to obtain relief within this criminal proceeding. Moreover, other courts have used similar reasoning to conclude that, if a district court would have jurisdiction under the Little Tucker Act, the court may order that the government refund a defendant within the criminal proceedings even if the defendant did not frame his motion for a refund as a Little Tucker Act claim. See Lewis, 478 F.2d at 836 (rejecting government's argument that a defendant must bring a Little Tucker Act claim to obtain a refund, explaining that there is "no reason why a person" whose conviction has been invalidated "should be required to resort to a multiplicity of actions in order to obtain reimbursement of money to which he is entitled"); Hansen, 906 F. Supp. at 697.

[14] The other judges in this District to have denied motions similar to St Cyr's on Appropriations Clause grounds neither considered district courts' jurisdiction under the Little Tucker Act nor recognized that the government has no right to retain funds exacted based on a now-vacated conviction. See, e.g., Vargas, 2025 WL 1786681, at *3; Sullivan, 2025 WL 1444392, at *6–7. And the judge who determined that 31 U.S.C. § 1304(a) would not provide an appropriation misperceived what occurs here. That judge reasoned that § 1304(a) is inapplicable because vacatur does not "award[] anything resembling a 'final judgment[] . . . against the United States.'" Sullivan, 2025 WL 1444392, at *7 (alteration in original) (quoting 31 U.S.C. § 1304(a)). While it is true that "the vacatur of a judgment against a criminal defendant is an act of erasure that is not tantamount to a judgment for that defendant against the United States," id. (emphasis in original), it is not the D.C. Circuit's vacatur (or this Court's subsequent dismissal) that is creating the judgment. Rather, it is this Court's order granting St Cyr's motion that is the requisite final judgment for purposes of § 1304(a), which the Court has the authority to issue under 28 U.S.C. § 1346(a)(2) and Wilson, 540 F.2d at 1104.

[15] The Court notes that funds can only be withdrawn from the Treasury under § 1304(a) if "payment is not otherwise provided for." 31 U.S.C. § 1304(a)(1). The Comptroller General may determine that St Cyr's refund is properly chargeable to another appropriation. See In re J. Fund & Law Enforcement Seizure Claims, B-259065 at 7 (Comp. Gen. Dec. 21, 1995) ("[O]rders to refund monies deposited to the credit of a fund other than the general fund of the United States Treasury are normally paid from the fund so benefitted, rather than the Judgment Fund."). But this Court need not make that determination here. It suffices that § 1304(a) will permit the money to be withdrawn if no other appropriation provides for payment. Cf. Slattery v. United States, 635 F.3d 1298, 1318 (Fed. Cir. 2011) ("Tucker Act jurisdiction is not affected by how the agency meets its obligations or how any judgment establishing those obligations is satisfied."). Likewise, the required certification by the Secretary of the Treasury is an administrative step the Court need not consider. See 31 U.S.C. § 1304(a)(2).

the statute under which she was convicted is unconstitutional, or any other reason—would ever have an avenue to obtain a refund once funds paid based on her conviction have been deposited into the Treasury. That would be untenable.

## CONCLUSION

Upon vacating St Cyr's conviction, the D.C. Circuit did not determine that St Cyr is innocent of the crimes for which she was convicted. Nor has this Court done so. But, because of the vacatur and subsequent dismissal, the law presumes that she is innocent. As a result, the government has no right to retain St Cyr's $2,270, which the law deems always hers, and the Court will grant her motion for a refund of the restitution and special assessment that the government holds.[16] A separate Order shall issue.

/s/
JOHN D. BATES
United States District Judge

Dated: August 27, 2025

---

[16] Currently pending before the D.C. Circuit are three appeals presenting the question whether a defendant whose conviction was vacated on appeal because of a pardon is entitled to recover the money paid pursuant to the now-vacated judgment. See United States v. Hager, No. 25-3076 (D.C. Cir. filed July 17, 2025); United States v. Ballenger, No. 25-3080 (D.C. Cir. filed July 21, 2025); United States v. Zabavsky, No. 25-3083 (D.C. Cir. filed July 31, 2025). Accordingly, this Court will stay its judgment in favor of St Cyr until those appeals have been resolved.